DE BATES, Appellant, v. SEARLS, et al, Respondents.

(219 N. W. 559.)

(File No. 5880.  Opinion filed May 19. 1928.)

*Mundt & Mundt,* of Sioux Falls, for Appellant.
*Tobin & Raley,* of Sioux Falls, for Respondents.

MORIARTY, C.   This matter is now before the court upon a rehearing.   The original opinion in the case will be found in 216 N. W. at p. 586, and a statement of the facts shown by the record is contained therein.

Upon the rehearing, respondents contend that said original opinion is erroneous for three reasons, as follows:

That the evidence shows that the piano originally owned by De Bates is not the piano sold to Searls.

That the piano was not conveyed by Fish to the Cable Company in payment of his debt, but was sold to Searls by Fish, the conditional sales contract made out on one of the Cable Company's blanks, and the contract turned over to the piano company by Fish for credit on his debt.

That Searls bought the piano in market overt, and therefore took good title thereto, regardless of the other questions involved.

The number of the piano described in the conditional sales contract is not the same as the number of the piano described in the plaintiff's complaint.   But Fish testified that the piano sold to Searls was the De Bates piano, and the record is silent as to the number of the piano actually taken by the plaintiff under his claim and delivery demand.   If there is any real contention as to the identity of the piano, that was a question to be submitted to the jury.

As to the question whether Fish sold the piano to the Cable Company to be applied upon his debt, or sold it to Searls and turned the contract over to the Cable Company thereafter, the sales contract, admitted in evidence without objection, purports to be signed by the Cable Company, acting through one W. W. Kerr, whose authority to so act is not questioned.   This contract recites that Searls has given his note payable to the Cable Company in consideration of the delivery to him by the Cable Company of the piano, describing it:

"And it is expressly agreed between the parties hereto that

said instrument is and shall remain the property of the Cable Company until the said note and all interest thereon shall be fully paid."

In the original opinion in this case this court said:

"Could Fish transfer title to the Cable Company in payment of his own debts?"

And upon this rehearing the respondents' counsel argue that in using such language this court assumed to be true something that the record does not show to be true.

But in that opinion the court prefaced its statement of the evidence by saying:

"In determining whether there was a question which should have gone to the jury, we are justified in resolving in favor of appellant all conflicting evidence."

This language applies to what is said concerning the transfer of the piano to the Cable Company, as well as to any other matter found in the record. If there is any question whether Fish sold the piano to Searls or turned it over to the piano company in payment of his debt, the sales contract is certainly some evidence that the piano itself was turned over to the Cable Company, and if, as appellant claims, there is evidence that Fish sold directly to Searls, and on his own behalf, the question is one upon which there is conflicting evidence and it should have been submitted to the jury.

█ As to the sale to Searls having been made in market overt:

In 38 C. J. at p. 1260, "market overt" is defined as follows:

"A fair or market held at stated intervals in particular places, by virtue of a charter or provision, to which ordinary markets or stores for the sale of merchandise bear no resemblance."

In its opinion in Ventress v. Smith, 10 Pet. 161, 9 L. Ed. 382, the United States Supreme Court says:

"It has sometimes been contended, that a bona fide purchase for a valid consideration and without notice, was equivalent to a purchase in market overt, under the English law, and bound the property against the party who had right. * * * But we are not aware, that this Saxon institution of market overt, which controls and interferes with the application of the common law, has ever been recognized in any of the United States, or received any judicial sanction."

To the same effect are the following authorities: 18 R. C. L. 370; American Live Stock Commission Co. v. Chicago Live Stock Exchange, 143 Ill. 210, 32 N. E. 274, 18 L. R. A. 190, 36 Am. St. Rep. 385; Fawcett v. Osborn, 32 Ill. 411, 82 Am. Dec. 278; Mowrey v. Walsh, 8 Cow. (N. Y.) 241; Wheelwright v. Depeyster, 1 Johns. (N. Y.) 478, 3 Am. Dec. 345; Klien v. Siebold, 89 Ill. 542; Warner et al v. Martin, 11 How. 209, 13 L. Ed. 667.

All authorities agree that the special English rule relating to sales in market overt is contrary to the rules of the common law. Section 3 of the Revised Code of 1919 provides that in this state the rules of the common law are in force, except where they conflict with the constitutional or statutory provisions or the ordinances of authorized subordinate bodies. Therefore the common law and not the Saxon instiution of market overt must control in the instant case.

Nothing presented upon the rehearing causes us to change our opinion that the instant case should be remanded for a new trial and submission to a jury of all material matters upon which there is conflicting evidence.

Our former opinion is adhered to, and the judgment and order appealed from are reversed.

POLLEY, SHERWOOD, and BROWN, JJ., concur.

BURCH, P. J., concurs in result.

CAMPBELL, J. (concurring specially). I am not in agreement with all the language used in the original opinion on this appeal, nor in this opinion. I thought then, and still think, that the correct result was reached, and therefore I still concur in the result.