HOEKSTRA, Appellant v. HELGELAND, Respondent

(98 N.W.2d 669)

(File Nos. 9704, 9710. Opinion filed October 13, 1959)

Rehearing denied November 18, 1959

**Mundt & Mundt,** Sioux Falls, for Plaintiff as Appellant in Case No. 9704, and as Respondent in Case No. 9710.

**Woods, Fuller, Shultz & Smith**, Sioux Falls, **Roscoe A. Frieberg,** Beresford, for Defendant as Respondent in Case No. 9704, and as Appellant in Case No. 9710.

BIEGELMEIER, J.   Plaintiff brings this action as the surviving wife against the administrator of the estate of Stener Helgeland for damages for loss of consortium of her husband resulting from his injuries and from his death. Plaintiff claims that these injuries and death were caused by the negligence of the defendant's decedent.

The defendant in his answer and by separate motion moved to dismiss plaintiff's action on the following grounds: (1) that the plaintiff failed to state a cause of action upon which relief could be granted; (2) that the complaint failed to state a cause of action upon which relief could be granted except for the period of time between the injury and death of the plaintiff's husband. The trial court denied defendant's motion based upon the first ground and granted the motion based upon the second. This court thereafter granted to both defendant and plaintiff leave to appeal from the respective orders entered by the court.

The question presented by defendant's appeal is whether or not the surviving wife can recover damages for loss of consortium resulting from a negligent **injury** to her husband because of the negligent acts of another.

SDC 65.0103 provides:

"The evidence of the common law, including the law merchant, is found in the decisions of the tribunals.

"In this state the rules of the common law, including the rules of the law merchant, are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in section 65.0102."

SDC 65.0102 so far as here apropos provides:

"The will of the sovereign power is expressed: * * *

"(4)  By the Constitution of this state;

"(5)  By statutes enacted by the Legislature;

* * * "

In De Bates v. Searls, 1928, 52 S.D. 603, 219 N.W. 559, 560, after referring to these statutes, we said: "Therefore the common law * * * must control in the instant case."

In Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266, this court held that the common law was in force in this state, with the exceptions stated in SDC 65.0103.

The court of a state may come to a conclusion as to the common law of that state different from the conclusion of the court of another state; it is the duty of this court to declare the common law from the decisions of the tribunals. SDC 65.0103.

"It is well settled that the common law of a state may differ from that of other states or may even vary from time to time in order to meet the peculiar, and perchance varying, conditions and circumstances of the state." Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9, 12.

A review of the history and the origin of the common law and the opinions of the courts on the questions presented by these appeals is of interest and will be of assistance in reaching a conclusion.

By primitive law, the only member of the family deemed to be harmed by an unjustifiable disturbance of family relations was the family head. Burdick's Law of Torts, 4th Ed., § 289; 3 Bl.Com. 139. See Moberg v. Scott, 1917, 38 S.D. 422, 161 N.W. 998, L.R.A. 1917D, 732, quoting from Flandermeyer v. Cooper, infra. Under this primitive and Blackstone's common law the wife was regarded as a chattel, or a servant, who owed her service to her master, her husband, and she could not sue for any injuries sustained by her, as an individual, except by an action in the joint names of the husband and wife, the recovery obtained being vested in the husband, who could discharge the cause of action without her consent, or prevent her suing by refusing to join as a

plaintiff. Laughlin v. Eaton, 1866, 54 Me. 156; Burdick, supra, 291. Similar statements of the historical and legal background appear in the opinions and treatises here cited.

The early common law recognized that a personal injury to a married woman caused by the tort of a third person gave rise to two causes of action, one for her personal pain and suffering, and the other for the expense incurred for her medical attention and nursing and for the husband's consequential loss of her society and services sometimes included in, differentiated from or used with the term consortium; that these actions were for the enforcement of independent rights, injury to the wife not implying injury to the husband. See Milde v. Leigh, 75 N.D. 418, 28 N.W.2d 530, 173 A.L.R. 738; Harper & James, The Law of Torts, § 8.9; 27 Am.Jur., Husband and Wife, § 490 et seq. See Comment, Restatement of the Law of Torts, § 693, note 21 A.L.R. 1519.

The husband's remedy was per quod consortium amisit (whereby he lost the company—of his wife) and not per quod servitium (whereby he lost the service—of his servant). 3 Bl.Com. 140; Black's Law Dictionary; Guevin v. Manchester Street Railway, 1916, 78 N.H. 289, 99 A. 298, L.R.A.1917C, 410; Pollock, The Law of Torts, 10th Ed., p. 237. We find many courts later stressed the servitium-service theory of the wife rather than the consortium-companionship theory, which is a transposition of the above distinction.

The first of such actions recognized at common law were for loss of consortium resulting from intentional injury. Guy v. Livesey, Cro.Jac, 502, 79 Eng.Rep. 428 (1619). There a husband brought an action in his name for trespass and assault and battery "for that the defendant did assault, beat, and wound the plaintiff; * * * that he assaulted and beat the wife of the plaintiff * * *."

The following verbatim from the opinion, the defendant having moved in arrest of judgment, insisting that the plaintiff-husband:

"cannot have an action for the battery of his wife, but ought to join his wife with him in the action; for

the damage done to the wife, she ought to have (if she survive her husband); and so the defendant may be twice punished for one and the same battery, if the plaintiff here should recover; for this recovery of the husband shall not bar her of bringing her action, if she survive him * * *.

"But all the Court held, that the action was well brought, for the action is not brought in respect of the harm done to the wife, but it is brought for the particular loss of the husband, for that he lost the company of his wife, which is only a damage and loss to himself, for which he shall have this action, as the master shall have for the loss of his servant's service."

In footnote (a) to this case it is stated that where a daughter is in such a situation in her father's family as to be considered his servant, the action will lie for debauching, per quod servitium amisit. 3 Bl.Com. 139, 140.

The right of the husband was later extended to allow him to recover for any negligent injuries to the wife whereby he "lost the comfort and society of (his wife) for a long time, and incurred and became liable to pay great expenses in nursing her, * * * and whereby the plaintiff lost (her) services * * * for a long space of time, and for want of such services was during that time prevented from carrying on the business of a dealer * * *" etc. Brockbank v. The Whitehaven Junction Rly. Co., 7 H. & N. 835, 158 Eng.Rep. 706 (1862); Prosser on Torts, 2d Ed. § 104, note 3; and see Skoglund v. Mpls. St. Ry. Co., 1891, 45 Minn. 330, 47 N.W. 1071, 11 L.R.A. 222, where this right was recognized and distinguished from the husband's right of action for his personal injuries caused by the same negligence. In Marri v. Stamford St. R. Co., 84 Conn. 9, 78 A. 582, 585, 33 L.R.A., N.S., 1042, the court referred to this as an extension of the common law in these words:

"Since Blackstone's day there has been an extension of the common-law right of a husband to recover for loss of consortium to cases in which the

personal injury sustained by the wife was the result of negligence, so that it is generally held that it makes no difference whether the injury is intentionally or negligently inflicted."

Consortium has been variously defined. Holbrook, The Change in the Meaning of Consortium, 22 Mich.L.Rev. 2 (1923); 42 Iowa L.Rev. 634; Lippmann, The Breakdown of Consortium, 30 Col.L.Rev. 651 (1930); (these articles are interesting treatments of the subject); Marri v. Stamford, supra, consortium distinguished from services; 41 C.J.S. Husband and Wife § 11; note 21 A.L.R. 1517. We have defined it in Morey v. Keller, 77 S.D. 49, 85 N.W.2d 57, 58 as "Consortium is a right growing out of the marital relationship. This term includes the right of either spouse to the society, companionship, conjugal affections and assistance of the other. Roberts v. Jacobs, 37 S.D. 27, 156 N.W. 589; Halmstrom v. Wall, 64 S.D. 467, 268 N.W. 423. A loss or impairment of any such elements will sustain an action for alienation of affections." In some cases the difference in definition or changes in meaning may account for the divergence in the opinions of the courts or their apparently different conclusions.

In Prosser, Law of Torts, 2d Ed., § 103, the author reviews the history of consortium as follows:

"The husband's interest in his relation with his wife first received recognition as a matter of her services to him as a servant. Over a period of some centuries it took form as something considerably broader than this, which was given the name of 'consortium.' Consortium was said to be made up of a bundle of legal rights to the alliterative trio of the services, society and sexual intercourse of the wife. To these elements the modern law had added a fourth, that of conjugal affection. The rights of the husband extend to all four; and while it is seldom that the defendant's conduct interferes with only one of them, it now seems clear in nearly all jurisdictions that such interference with any one

will be sufficient as a foundation for the action. The loss of services, essential at the beginning, no longer is indispensable, and is now only one element upon which the action may be based."

The elements other than service are sometimes referred to as the sentimental elements of marriage or of the term consortium itself. Marri v. Stamford, supra; Golden v. R. L. Greene Paper Co., 44 R.I. 231, 116 A. 579, 21 A.L.R. 1514; note 133 A.L.R. 1156. Any such rights in favor of the wife, however, were slow to be recognized by early law, and slower yet to be protected or enforced. Blackstone observes that the common law in his time (1753) totally disregarded the loss sustained by the "inferior" party (the wife) to the family relation. His explanation of the doctrine stated thus:

"* * * the inferior hath no kind of property in the company, care, or assistance of the superior (husband) as the superior is held to have in those of the inferior; and, therefore, the inferior can suffer no loss or injury. The wife cannot recover damages for (another person) beating her husband, for she hath no separate interest in **anything** during her coverture." 3 Bl.Com. 142 (emphasis and matter in parenthenses supplied); Burdick's Law of Torts, 4th Ed., § 289; Moberg v. Scott, supra.

Some courts chafed at, and attempted to throw off, this early common-law "bar sinister" which prevented a married woman from being sui juris—a legal personality, at least so far as her right to sue for injuries to her. One early case, Westlake v. Westlake, 1878, 34 Ohio St|. 621, 32 Am.Rep. 397, took a step in this direction. It held that a wife, in her own name, could maintain an action for loss of consortium, i. e., the loss of the society and companionship of her husband, against one who wrongfully induced him to abandon her or send her away. The court reasoned that while by the early common law in England, a husband and wife were regarded as one person (and that one was the husband) yet in the civil law administered by the ecclesiastical courts they were regarded as two distinct persons and the wife could

90

have her injuries, of which those courts had jurisdiction, redressed in her own name. As she could sue in the latter courts for restitution of conjugal rights, the court said, "the rights of the wife in these respects were recognized and redressed when injured. The fact, that instead of giving her damages for the loss of the **consortium** of her husband, the spiritual courts restored to her the thing itself, makes no difference in the principle involved." After reviewing Lynch v. Knight, 9 H. of L. 577, and the opinions of the various judges, the court referred to the "unsatisfactory state of the (English) common law in reference to the rights of the wife" and continued: "Having shown the doubtful aspect of this question at common law, it will be my object now to show that the reasons that gave rise to those doubts, either never existed in this State, or that they have been swept away by legislation."

After stating that there was only one court that had jurisdiction of marital rights in Ohio and not two—ecclesiastical and common law as in England, the opinion then refers to the settled law of Ohio on defamation, saying: "In this respect, therefore, the law of this State has never been in accord with the common law." Assuming Lord Wensleydale's statement in Lynch v. Knight, supra, to be correct, the opinion then turns to the state statutes to "see if this doctrine of the common law has not been overthrown by the legislation of this State." These statutes as quoted by the court read: "All personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift * * * **or have grown out of a violation of any of her personal rights,** shall * * * be and remain **her separate property** * * *" and "Where a married woman is a party, her husband must be joined with her, except when the action concerns **her separate property** * * *." The court then said:

> "This legislation, in effect, abolishes the common law unity of person in husband and wife, * * * Consequently, in this respect at least, under our legislation, the benefit which the wife has in the **consortium** of the husband is equal to that which

the husband has in the consortium of the wife. If, at common law, the husband could maintain an action for the loss of the **consortium** of the wife, I can see no reason why, under our law, the wife can not maintain an action for the loss of the **consortium** of the husband. And if it be said that it was the loss of the **services** of the wife, that constituted the **gist** of the husband's action in such cases, it is a sufficient answer to it to say, that the reasons upon which this rule of the common law rested, either never existed or have ceased to exist in this state. * * *

"Is the right of the wife to the **consortium** of the husband one of her personal rights? * * * In this state, neither the husband nor wife unconditionally surrenders their personal rights by consummating the contract of marriage. On the contrary, each acquires a personal as well as legal right to the conjugal society of the other, for the loss of which either may sue separately."

The path of freedom from common-law fetters, sometimes called the "shackles" of the common law (Nash v. Mobile & O. R. Co., 149 Miss. 823, 116 So. 100, 59 A.L.R. 676) which this opinion charted was not without its difficulties. Two judges dissented from it, declaring that the statutes quoted did not create a cause of action where none existed before and under the common law of the Lynch v. Knight decision in the House of Lords, there was no cause of action.

However, by 1894 the logic of this majority opinion was sufficient for the Iowa Supreme Court under similar statutes to affirm an alienation of affections judgment in favor of a wife against her husband's parents. Price v. Price, 91 Iowa 693, 60 N.W. 202, 29 L.R.A. 150. There the trial court had charged the jury that the wife was entitled to recover "for the loss, if any, she has sustained, of the love, affection, companionship, support, and society of her husband." Defendants insisted that the wife had no right of action on

such grounds at common law and that none was given by the statute of Iowa. The court said:

"The tendency of legislation in this country is towards making husband and wife equal in law, giving to each the rights possessed by the other. * * Section 2211 of the Code provides that 'a wife may receive the wages of her personal labor * * * and she may prosecute and defend all actions at law or in equity for the preservation and protection of her rights and property as if unmarried.' Section 2562 is as follows: 'A married woman may in all cases sue and be sued without joining her husband with her, to the same extent as if she were unmarried * * *'. Considerations of the highest character give to each the right to the affection, companionship, and society of the other, and whoever wrongfully deprives either of that right may be held responsible. As it is a valuable property right when due to the husband, it must be so regarded when due to the wife. That being true, the recovery by her of damages caused by its loss, as well as for loss of support, is authorized by section 2211 of the Code."

Eliason v. Draper, 1910, 2 Boyce 1, 25 Del. 1, 77 A. 572, 575, was an alienation of affections action that considered the right of a married woman to sue in her name alone under that state's married woman's act. The court's opinion reviews the common-law rules, the conflict of opinions that had arisen respecting the effects of these acts and enumerates four classes of cases resulting from them. The court said:

"It has never been disputed that at common law it was the right of the husband to have and hold the affection, society, aid and comfort of his wife, and it is admitted that the law also gave him a right of action against one who interfered with that right by enticing away his wife and alienating from him her affection. Winsmore v. Greenbank,

Willes, 577. The basis of such an action was, as it is now, the loss of consortium or the right of the husband to the conjugal society of his wife.

"The right of the wife to the consortium of the husband was likewise recognized at common law as an existing right of the married woman, though a right of action for its invasion was denied her because of the common-law doctrine of identity of person and its consequent trammels of technical procedure. Nevertheless her right existed, * * *

"The pronounced weight of authority in this country supports the proposition that the right to the consortium of the husband was recognized at common law as a right inherent in the wife, though not then enforceable in an action at law because of the conflict in the rules of procedure and the policy of the times. (Cases supra.)

"Being of the opinion that the common law gave to a married woman a legal right to the consortium of her husband, but withheld from her, because of her disabilities of coverture, a legal remedy by which she might enforce that right, it now becomes necessary to ascertain what were those disabilities and whether they have been removed by statute so as to make the right capable of enforcement by an action at law. * * *

"We are therefore of opinion that the statute of 1871, * * * removes from a married woman, * * * both of the common-law impediments to a remedy in an action in tort of this character, and the right of the married woman to her husband's consortium is by that removal at once made capable of enforcement under the remedial provisions of this act."

While the opinions and results reached speak for themselves, it may be observed that in these two cases the courts relied on the historical background and leaned on the married

woman's act for its decision, even though, as the dissent in the Ohio case stated, their statute "does not create a cause of action where none existed before." It remained for the decision of Foot v. Card, 1889, 58 Conn. 1, 18 A. 1027, 6 L.R.A. 829, to sustain an action on behalf of the wife for alienation of her husband's affections without the aid of any statute. All the old common-law defenses were pled and argued—that plaintiff wife and her husband were still living together and he should be made coplaintiff; that the complaint was insufficient in law to state a cause of action; that plaintiff, a married woman could not maintain any such action with the husband as plaintiff because of his misconduct; that it does not appear the supposed wrongs which plaintiff is said to have suffered resulted from defendant's acts but directly from the husband's voluntary immoral conduct and no action for criminal conversation is at common law maintainable by a married woman against a married woman and no statute authorized it. The court considered these, with 3 Bl.Com.143 and Lynch v Knight, supra, and sustained the action. Much of this Connecticut case was quoted with approval in Rott v. Goehring, 33 N.D. 413, 157 N.W. 294, L.R.A.1916E, 1086, where the tendency of modern thought on the common-law relation of husband and wife is mentioned.

These decisions are an indication of the flexibility of the common law (Moberg v. Scott, supra) to adapt itself to the changing nature of human affairs and that the common law of England and Blackstone's time was not the common law of a different place or time or perchance not in accord with the varying conditions and circumstances of that state and its people. Thompson v. Andrews, supra. They were a recognition by the courts of what the legislatures of the states had recognized by passing the various married woman's acts—what the people of the states had learned as a fact: that the servant status of the woman of the Blackstone era had changed, that she had become a legal pesonality with its attendant rights. The legislature of the Territory of Dakota had acknowledged this trend for in 1887 it enacted Chapter 98, Section 1, which provided:

> "From and after the passage of this act, woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injury sustained to her reputation, person, property, character or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone; * * *."

This was carried in the 1887 Compiled Laws of Dakota as § 2600 of the Civil Code, in substance as § 105 of the 1903 Rev.Civil Code and through other codes to the 1939 Code as SDC 14.0207.

While the reported cases show the slow and tortuous struggle for recognition and enforcement of woman's legal rights practically every state in the union has now extended to the wife the right to sue for alienation of affections and criminal conversation, only Minnesota denying the latter and Maine denying both. Lippman, The Breakdown of Consortium (1930), supra, at page 662; Holbrook, The Change in the Meaning of Consortium, (1923) supra, at page 5. While this result as to alienation of affections was achieved in America many years ago, it was not until 1923 that it was first held in England that such an action would lie, the verdict being for the defendant. Holbrook, supra, page 5. The various treatises and law reviews, with the many cases cited therein give a much more complete picture, but we have made here a general survey of the right of husband to sue for his damages resulting first from intentional ,then negligent injury to his wife and the right of action of a wife for so-called intentional injuries to her husband, causing damages to her, these damages being punitive, compensatory, for consortium or some of its elements, depending on the basis of the cause of action and the forum. How then does this history, the reasoning of these opinions and law apply to the action at bar?

Plaintiff urges that by the adoption of our married woman's acts, the wife may now bring and maintain a cause of action for damages for her loss of consortium and cites among others the following as support of her claim: Art. VI, § 20, South Dakota Constitution:

"All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

SDC 14.0207 Rights of married women: same as single.

"The wife shall have and retain after marriage all the civil and property rights of a single woman. * * * for any injury to her reputation, person, or property, she may sue in her own name without joining her husband as party plaintiff * * *."

SDC 47.0301 should be added to this grouping. It reads:

"Every person has, subject to the limitations provided by law, the right of protection from bodily harm or restraint, from personal insult, from defamation, and from injury to his personal relations, and every person is bound, without contract, to abstain from injuring any such rights of others and to abstain from injuring the person or property of another."

These sections are substantially the same as the predecessor sections quoted in Moberg v. Scott, supra; Sec. 32, Civ.Code of 1903, there quoted is similar to our present SDC 47.0302. While such sections were in effect this court held, in cases involving alienation of affections and sales of liquor and drugs to the husband, that the wife had a cause of action for loss of consortium, which she could maintain in the courts. After quoting these sections, this court in Moberg v. Scott, 38 S.D. 422, at page 427, 161 N.W. 998, at page 999, said:

"It is clear therefore that the injuries done to one in his person, within the meaning of the above

section of the Constitution, and the loss or harm suffered in person, within the meaning of section 2287, C.C., include injury to one's personal rights as well as physical injuries to the person. So that, but for the question of coverture, the present action is fully warranted by statute. But by section 105, C.C. (now SDC 14.0207), the disability of coverture, so far as the present action is concerned, was entirely removed. * * *

"Again, since the common-law disabilities of the wife have been almost entirely removed, such an action under **present-day common-law,** may be brought by the wife regardless of other statutory authority and regardless of what the **early common law** was. (Emphasis supplied.) In Flandermeyer v. Cooper, 85 Ohio St. 327, 98 N.E. 102, 40 L.R.A.,N.S., 360, Ann.Cas. 1913A, 983, the court said:

"The primary and most important question presented by this record is whether a wife has a common-law right of action against one who wrongfully and maliciously interferes with the marital relationship and deprives her of the society, companionship, and consortium of her husband. In the absence of a statute authorizing such recovery her right to maintain this action rests wholly on the common law, and if the common law does not afford her a right of action, then she cannot maintain this suit, and the demurrer to the petition should have been sustained. It is very clear that originally the common law recognized no such right in the wife. By the primitive law, the only member of the family deemed to be harmed by an unjustifiable disturbance of the family relation was the head of the family. Blackstone in his Commentaries, vol. 3, pp. 142, 143, says that these torts directed against the peace and tranquility of domestic relations are actionable only when committed against the husband. In the case of Lynch v. Knight, 9 H.L.Cas. (Eng.) 577, Lord Wensleydale held that: 'No re-

covery could be had without joining the husband in the suit, who himself must receive the money, which would not advance the wife's remedy, and to allow her to recover in such an action would involve the absurdity that the husband might also sue for such a cause.' It must be remembered, however, that this interpretation of the common law, with reference to the wife's right to maintain an action of this character, obtained upon the theory that the wife's personality merged in that of her husband's, and that she was not then entitled to hold property separate and apart from her husband, and not authorized to bring suit in her own name. Now the legal status of the wife has been changed by legislation. Her legal personality is no longer merged in that of her husband. By force of the several statutes in this state in reference thereto, a husband has no longer any dominion over the separate property of his wife, and she may maintain an action in her own name, without joining her husband in the suit. The right of action growing out of an injury to her personal rights is her separate property for which she may maintain an action in her own name. The right of the wife to the consortium of the husband is one of her personal rights. It therefore follows that the principle of the common law which allowed a right of action to the husband for the invasion of this right, now, under the changed condition of affairs and in view of the present legal status of the wife, applies to her equally with the husband. It is said by Burdick in his Law of Torts, at page 276, that: 'With this change in her legal status came naturally a change in the judicial conception of her marital wrongs. As she could maintain an action in her own name, and damages recovered would be her sole and separate property, one of the chief objections urged by Lord Wensleydale disappeared. As the law now recognized her legal equality with her husband, Blackstone's reasoning, based upon the superiority of one

party and the inferiority of the other party to the marital relation, had no longer the foundation of even a fiction.' A statutory right cannot change except by action of the lawmaking power of a state. But it is the boast of the common law that: 'Its flexibility permits its ready adaptability to the changing nature of human affairs.' So that whenever either by the growth or development of society or by the statutory change of the legal status of any individual, he is brought within the principles of the common law, then it will afford to him the same relief that it has theretofore afforded to others coming within the reason of its rules. If the wrongs of the wife are the same in principle as the wrongs of the husband there is now no reason why the common law should withhold from her the remedies it affords to the husband. Hale on Torts on page 278, says: 'In natural justice, no reason exists why the right of the wife to maintain an action against the seducer of her husband should not be coextensive with his right of action against her seducer. The weight of authorities and the tendency of the legislation strongly incline to the latter opinion.' 1 Cooley on Torts (3d Ed.) page 477, says: 'Upon principle this right in the wife is equally valuable to her as property, as is that of the husband to him. Her right being the same as his in kind, degree, and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him. * * * The gist of the action is the loss of consortium, which includes the husband's society, affection and aid.' "

In the Moberg case the complaint of the surviving wife alleged that defendant sold opium to her husband causing his illness and death and this deprived her of his aid, support, affection, society, companionship, protection and consortium; the defendant demurred claiming want of sufficient facts to constitute a cause of action and plaintiff's lack of capacity to sue; this court sustained the complaint.

This Section 32 of the Civil Code of 1903 stated the rights that the personal relations forbade—it did not then include the same Blackstonian 1753 causes of action, nor does its successor SDC 47.0302, of which this court said: "Said section 32 does not purport to assert that the rights of personal relation may not forbid other things than those mentioned." Accord: Rott v. Goehring, supra. After the trial, the Moberg action was again before this court. Moberg v. Scott, 1919, 42 S.D. 372, 175 N.W. 559, 560. That opinion states:

> "Action to recover actual and exemplary damages occasioned by plaintiff's loss of conjugal consortium during a period of illness preceding the death of plaintiff's husband, and for damages resulting from his death, which sickness and death were alleged to have been caused by defendant's unlawfully, willfully, maliciously, and knowingly furnishing the deceased with commodities of which opium was an ingredient. * * * there was ample (evidence) from which the jury was warranted in finding that plaintiff's husband, for the last year or more of his life, was in a physical and mental condition unfitting him to give to his wife that aid, support, society, and companionship to which she was entitled, and which she had thertofore enjoyed * * * and that such drug was wrongfully, unlawfully, and knowingly furnished the husband by defendant."

The complaint asked $10,000 actual and $5,000 exemplary damages and this court affirmed a jury verdict for plaintiff of $12,500, declaring the recovery was not based on or limited by the wrongful death act, Ch. 301, Laws of 1909 (now SDC 37.22). The basis of recovery was:

> "Therefore either upon present-day common law, in view of the discoverture of the wife by statute, or because of other statutes, the courts of nearly all of the states in the Union, with the exception of Wisconsin, Maine, and New Jersey, sustain the wife's right to bring an action similar in character

to this. For both reasons we sustain the complaint and approve the ruling of the trial court." Moberg v. Scott, 38 S.D. at page 431, 161 N.W. at page 1001.

In Holmstrom v. Wall, supra [64 S.D. 467, 268 N.W. 424], we said:

"In the Moberg-Scott case this court very clearly and definitely held that since the enactment of the statute removing the disability of coverture, there exists a present day 'common-law right' in the wife to maintain an action for the loss of the husband's society, affection, or consortium. This right exists independent of any statute."

In Swanson v. Ball, 67 S.D. 161, 290 N.W. 482, 483, we further said:

"It would thus appear that this court has determined quite precisely the questions urged in the instant case. The decisions that we have just referred to we believe conclusively establish the law in this instant case to the effect that independent of any specific statute the wife has a cause of action against anyone wrongfully interfering with the marital relationship regradless of the agency or instrumentality employed to inflict the loss."

The defendant argues that as these three South Dakota cases involve a malicious and wilful tort, they are distinguished from the case now before us involving a negligent tort. The majority of the cases attempt to make such distinction. Although they allow a wife a right of action for loss of consortium for alienation of affection, criminal conversation and sale of drugs or liquor to the husband they deny the wife the right of action where loss of consortium arises from the negligent acts of a third person. In fact prior to the case of Hitaffer v. Argonne Co., 87 U.S. App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, only one case had allowed such action. Hipp v. E. I. Dupont de Nemours & Co., 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873. Later the Hipp case was overruled by Hinnant v. Tide Water Power Co., 189 N.C. 120, 126 S.E. 307, 37 A.L.R. 889. The reasoning and

conclusions of the Hitaffer case have been approved in the cases of Brown v. Georgia-Tennessee Coaches, Inc., 1953, 88 Ga.App. 519, 77 S.E.2d 24; Acuff v. Schmit, 1956, 248 Iowa 272, 78 N.W.2d 480; Missouri Pacific Transportation Company v. Miller, 1957, 227 Ark. 351, 299 S.W.2d 41. Reviews of these cases and this subject appear in 23 U.Cin.L.Rev. 108; XVI Ga.Bar Journal 335 and 42 Iowa L.Rev. 634.

The Hitaffer case summarized the reasons usually given for denying the wife the right of action as:

(1)   The injury to the wife is indirect and so not compensable;

(2)   That her injuries are too remote and consequential to be capable of measure;

(3)   The common law recognizes no cause of action for loss of the so-called sentimental elements of consortium and the married woman's acts have given the wife no new cause of action;

(4)   That no cause of action for loss of consortium was ever allowed in which there was no showing of the loss of some services;

(5)   There might be a recovery by both husband and wife for the same damage.

Each of these reasons was discussed in the Hitaffer case as follows [87 U.S.App.D.C. 57, 183 F.2d 815]:

> "As to those authorities which hold that the injury to the wife is not compensable because it is indirect, we simply state that if that be so then it would likewise be true in the husband's suit. But such is not the rule here. Invasion of the **consortium** is an independent wrong directly to the spouse so injured. The mere fact that the loss of one or the other of the elements thereof may have been indirectly redressed in another's suit, does not make the injury to the remaining elements any less direct.
>
> "The argument that the injuries of which a wife complains are too remote and consequential fails for two reasons. In the first place, we are committed

to the rule in negligence cases that where in the natural and continual sequence, unbroken by any intervening cause, an injury is produced which, but for the negligent act would not have occurred, the wrongdoer will be liable. And it makes no difference whether or not that particular result was foreseeable. Secondly, if such a rule were valid there could be no basis for distinguishing between an action by a husband and one by the wife. In both cases the damages for the sentimental elements would be too remote and consequential; and yet we do not apply such a rule in the husband's action. And, furthermore, there could be no reason for the allowance of an action for criminal conversation or alienation of affections in cases where the husband condoned the wife's conduct, for obviously there would be no disruption of services; yet under such circumstances, it has been held that the husband may sue the seducer. The same would also be true in cases where it has been held that a husband has a cause of action for criminal conversation though living apart from his wife. Here too there could be no showing of a loss of services. In both cases the only injury to the spouse's **consortium** lies in the sentimental area.

"Within the rationale of the cases just cited, allowing a husband recovery in cases where he can show no loss of services, lies the destruction of the authorities which hold that the common law recognized no cause of action for the loss of the so-called sentimental elements of the **consortium** alone, and the cases which further refine the rule by holding that an action for the loss of the sentimental elements cannot be allowed unless there is a showing of a loss of some material services. There is no judicial precedent for these rules, and the allowance of the action where no loss of material service is shown effectively destroys them.

"Another group of cases which similarly appear to place principal emphasis on the element of

services in these actions hold that in negligent invasions of the **consortium** the wife has no cause of action because the husband, who is under a legal duty to support his wife according to his station in life, recovers in his action for the tort, as an element of his damages, for any impairment of his ability to perform his obligation, and thus the wife indirectly recovers for the value of any loss of her **consortium.** Any other conclusion, they reason, would result in a double recovery. The husband, on the other hand, is allowed the action when the wife is injured, because she is under no corresponding duty to him. Of course, as we have already pointed out, there is no foundation for the statement that the predominant factor involved in negligence cases of this type is the element of material services. For that reason we cannot accept their argument. There is more to **consortium** than the mere services of the spouse. Beyond that there are the so-called sentimental elements to which the wife has a right for which there should be a remedy. We do agree, however, that if the wife is allowed to sue, there could be a double recovery in regard to the service element of **consortium,** if the husband's recovery is not taken into account in measuring the wife's damages and we shall deal with the problem hereinafter in more detail."

A few courts have held that by reason of the married woman's acts giving to the wife the benefits of her own service the husband's cause of action for loss of consortium at common law no longer exists. Marri v. Stamford St. R. Co., 1911, 84 Conn. 9, 78 A. 582, 586, 33 L.R.A.,N.S., 1042. There the court in a negligence case considered the history of the development of the common law on the subject of the material or practical side, i.e., service, and the sentimental side, of the conjugal relation and the effect of the so-called married woman's acts thereon. The court stated: "We are not now dealing with the sentimental side of the conjugal relation. * * * We are, however, concerned with

the more material side of the marital union—with the side which represents practical results expressed in the terms of service." The court concluded under the statutes of Connecticut affecting married women, that they were of equal dignity before the law with their husbands by saying:

"The question then remains whether the law shall say that both husband and wife are entitled to maintain an action for loss of consortium, when the other sustains at the hands of a third person personal injuries, not accidental, resulting in physical impairment, or that neither can do so."

The court held neither could do so. See comment on this case, 30 Col.L.Rev. 666. Connecticut now allows a husband to recover expenses incurred in his wife's restoration from the negligent injuries or for service in the maintenance of the family. See Hansen v. Costello, 125 Conn. 386, 5 A.2d 880.

In Bolger v. Boston Elevated R. Co., 205 Mass. 420, 91 N.E. 389, the court allowed the husband to recover only expenses of his wife's cure under facts, statutes and reasoning similar to the Connecticut opinion. This Connecticut theory is founded upon the proposition that in actions based upon negligent tort, material services, i. e., the servant's role, is the predominant factor; that as the married woman's act has now removed this factor from consideration so far as the husband is concerned his common-law action for loss of consortium no longer exists. In so holding these courts have overlooked or denied that there are more elements in consortium than services, and a loss or impairment of any such elements will sustain an action, or that such services are not those of a servant but of a wife who makes the home cheerful and inviting and ministers to the husband's happiness. Denver Consolidated Tramway Co. v. Riley, 14 Colo. App. 132, 59 P. 476. See also Gainesville H. & W. Ry. Co. v. Lacy, 86 Tex. 244, 24 S.W. 269; Selleck v. City of Janesville, 104 Wis. 570, 80 N.W. 944, 47 L.R.A. 691. Also these courts seem to overlook the probabilities the husband may sustain a greater loss of the sentimental components of marriage as a result of her injury than another may

suffer due to his wife's alienation of affections, for time may erase the mental aberration, but may not restore the physical ability to furnish the elements of consortium, or a husband whose wife has been induced to leave may sustain a greater material loss than one whose wife has been injured. See 30 Col.L.Rev. pp. 666-667.

We agree that there appear no logical reasons for denying to a wife a recovery for loss of consortium resulting from the negligent injury of her husband. Prosser in Law of Torts, 2d Ed. § 104, p. 704, says, "Obviously it can have no other justification than that of history or the fear of an undue extension of liability of the defendant, or a double recovery by wife and husband for the same damages." We do not agree that this is an extension of common-law liability; this is common-law liability. As we said in the Moberg-Scott case, the statutory change of the legal status of the wife has now brought her within the principles of the common law and thus it will afford to her the same relief that it has theretofore afforded to the husband. The action on the part of the wife for loss of consortium of her husband as the result of his negligent injury will create no more problems in regard to double recovery than will an action brought by the husband for loss of consortium of his wife under the same circumstances.

This double recovery cry has been heard before. In Rowe v. Richards, infra, it was made and answered by this court (32 S.D. 66, at page 78, 142 N.W. 664, at page 667, L.R.A.1915E, 1069): "This doctrine (which the court there announced) has been criticized on the ground that it allows a double recovery for the same injury. The criticism is not warranted, however; for, while the injury in both cases is caused primarily by the same negligent act, two distinct classes of damages result therefrom, one in favor of the injured party for loss of time, for mental and physical pain and suffering, expenses incurred for medical and surgical attendance, nursing, etc., and the other in favor of some third party, such as husband, wife, or heir, for such pecuniary loss as they may have suffered * * *". See also Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001, L.R.A.1915E,

1075, for Judge Whiting's discussion of double damages. It (the double recovery claim) goes back to 1619. Guy v. Livesey, supra.

When he is negligently injured the husband's damages are for medical and other expenses incurred, his pain and suffering, loss of earning power for the time he is incapacitated, out which he is to support and care for his wife and family and for the deprivation of his right to the consortium of his wife during that time; we see no double recovery if the wife is allowed damages for the loss of the "society, companionship, conjugal affections and assistance of the other", the so-called sentimental elements of consortium, to which each has the right. Morey v. Keller, supra. The wife does not lose the right to, and cannot recover for, the support of her husband. SDC 14.0209. This is part of **his** claim.

Juries are being asked daily to place values for similar damages in alienation of affection actions, on pain and suffering, to balance slight against gross negligence and mitigate damages accordingly in personal injury actions, on malice in actions where exemplary damages are allowable and in other cases which are as difficult as the case before us, so this should not be set up as a bar or argument against such recovery. It does not seem to be a deterrent to inclusion of these elements and estimation of their value when the courts permitted recovery thereof in actions by a husband.                                    ,

That the conclusion we reach will develop a fruitful field of litigation has been heard before as an objection to many pronouncements of the law by the courts. In Duffies v. Duffies, 1890, 76 Wis. 374, 45 N.W. 522, 525, 8 L.R.A. 420, Judge Orton, in an opinion that denied a wife the right to sue for the alienation of affections of her husband stated that "This right of action in the wife would be the most fruitful source of litigation of any that can be thought of" and yet in an earlier sentence concerning the plight of the wife at common law as he viewed it, he said: "This may have been grossly wrong, but such was the theory of the common law * *."

Time saw this right to suit for alienation of affections extended to every state in the union. Lippman, supra, page 664. If there is abuse of this and similar domestic relations actions, the legislatures may act to remedy or curb it. Some states have done so. Prosser, supra, page 697.

This fear of double recovery or of fruitful litigation may not be justified, for under proper instructions and subject to review by the courts, Missouri Pacific Transportation Company v. Miller, supra, the former may be eliminated or controlled; as to the latter we have seen no flood of such litigation after the Moberg v. Scott decisions. Rather there has been a paucity of them which may indicate a sobering effect on the wrongful actions they proscribe and penalize. Plaintiff's counsel informs us in the briefs that on the trial of Swanson v. Ball, supra, the jury returned a verdict for plaintiff of one dollar which is hardly "fruitful litigation". The so-called intentional injury theory may be fallacious. In criminal conversation action the offending party may be unaware of the marital status of her paramour and could hardly be held in fact to have malice or an intention of any kind, yet liability is said to fasten, Harper & James, supra, § 8.3, n. 19, 3 Restatement, Torts, § 683, comment g, and there can be little said for permitting recovery by a wife from a tort-feasor who wilfully struck or beat a husband and denying it when a more serious injury is caused by negligence.

The defendant urges that if the wife is to be entitled to a right of action for loss of consortium resulting from the husband's negligent injury, this is a matter for the legislature and not for the courts. This too was the cry in 1890 when the court denied the right of action of a wife for alienation of the affection of her husband. Duffies v. Duffies, supra. We believe we would be denying a present-day common-law right of action if we held that a wife cannot recover for loss of consortium due to the husband's negligent injury. Thus the only matter for the legislature would be the denial of the wife's right of action and not the allowance thereof.

The conclusion we reach is not judicial legislation as the dissent in the Missouri Pacific Transportation Company

v. Miller, supra, claims. It declares the law by judicial decision, just as Guy v. Livesey did in 1619, Moberg v. Scott in 1917 and 1920 and as each of the other decisions was a declaration of the law at that time and place. Brown v. Georgia-Tennessee Coaches, supra. It is consistent with what was held in Moberg v. Scott, 38 S.D. 422, 161 N.W. 998, L.R.A.1917D, 732, and SDC 37.1701, then § 2286 C.C. hereafter set out.

We have read nearly all the decisions on this vexing question and studiously considered their reasoning, perhaps, better put:—the reasons and arguments in both the majority and dissenting opinions; the great majority of the decisions reach a contrary result, some for reasons that do not appeal to us or do not apply to our state. Some opinions refer to the number of sister states so holding, we have preferred cogent reasoning to large numbers. Whiting, J., 35 S.D. at page 205, 151 N.W. 1001; see Acuff v. Schmit, supra. The many decisions are listed in the opinions here cited and in the recent case of Deshotel v. Atchison, Topeka & Santa Fe Ry. Co., 1958, 50 Cal.2d 664. 328 P.2d 449, reversing Cal.App., 319 P.2d 357.

The question presented by plaintiff's appeal is whether or not the surviving wife can recover damages for loss of consortium resulting from the **death** of her husband caused by the negligent acts of defendant's decedent.

At common law no civil action could be maintained for damages for the death of a human being brought about by either the wrongful act or negligence of another. Baker v. Bolton, 1 Camp. 493, 170 Eng.Rep. 1033; Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001; Roster v. Inter-State Power Co., 58 S.D. 521, 237 N.W. 738; Jensen v. Juul, 66 S.D. 1, 278 N.W. 6, 115 A.L.R. 1280. In the Roster v. Inter-State Power Co., case we said [58 S.D. 521, 237 N.W. 739]: "Independent of statutory authority there is no cause of action arising from the death of a human being."

Because of the harshness of the common-law rule, statutes were enacted to change it. In England the Lord Campbell's Act was adopted and in this state we adopted what

is known as the wrongful death statute. SDC Supp. 37.22 provides that whenever the death or injury of a person shall be caused by the wrongful act, neglect or default as would have entitled the party injured to maintain an action and recover damages in respect thereto if death had not ensued, an action may be brought for damages. Such action shall be for the exclusive benefit of the wife, or husband, and the children, or if there be neither of them, then of the parents and next of kin, and shall be brought in the name of the executor or administrator. The jury may give such damages not exceeding in any case $20,000 as they may think proportionate to all injury resulting from such death to the persons respectively for whose benefit such action is brought.

Apparently the plaintiff is contending that she can maintain her present action under our constitution and statutes entirely independent of the common law or of the wrongful death statute. She bases her contention primarily upon the Moberg v. Scott case, supra, and in her brief and argument calls our particular attention to the language as found in 38 S.D. 422 ,at page 427, 161 N.W. 998, at page 999, where we said: "Const. art. 6, § 20 provides: 'Every man (person) for an injury done him in his property, person or reputation shall have remedy by due course of law.' * * * Section 2286, C.C., (now SDC 37.1701) provides: 'Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages.' Section 2287 provides: 'Detriment is a loss or harm suffered in person or property.' * * * It is clear therefore that the injuries done to one in his person, within the meaning of the above section of the Constitution, and the loss or harm suffered in person, within the meaning of section 2287, C.C., include injury to one's personal rights as well as physical injuries to the person. So that, but for the question of coverture, the present action is fully warranted by statute."

In Moberg v. Scott, 42 S.D. 372, at page 379, 175 N.W. 559, we pointed out that the decedent's injury therein

was not caused by such act, neglect or default as would have entitled him to recover if death had not ensued. That action could have been brought under the wrongful death statute. This differs from the action now before us as the allegations of the complaint here show that an action could have been maintained by plaintiff's husband if death had not ensued.

■ Plaintiff is apparently claiming that actions may be brought based on the **death** of her husband, one under the wrongful death statute and the other for the loss of consortium. We do not believe that such was ever contemplated by the legislature by the adoption of the wrongful death statute. We are of the opinion that where an action can be brought under this statute, it is an exclusive remedy.
■ ■ A comparison of the actions which plaintiff contends is authorized under our constitution and statutes, and the wrongful death statute further discloses the intent of the legislature. The parties receiving the benefits of these actions are of the same class. The plaintiff in this action would be a beneficiary and perhaps the chief or sole beneficiary in an action brought under the wrongful death statute.This statute expressly permits the jury to give damages as they may think proportionate to **all injury.** In Rowe v. Richards, 32 S.D. 66, 142 N.W. 664, 666, L.R.A.1915E, 1069, Judge Polley speaking for the court refers to the distinction between the cause of action growing out of personal injuries and a cause of action growing out of death by negligence, that the first accrues to the person injured during his lifetime and includes recovery for certain damages there noted, and the latter accrues and is in favor of "some other party, usually the husband or wife and next of kin, and is limited to loss of means of support, loss of society, comfort, and care suffered by the plaintiff in the death of the decedent." This recovery would necessarily and could only, be possible by virtue of our version of Lord Campbell's Act, which he thereafter quoted. Ch. 301, Laws of 1909, which limited recovery to pecuniary injury and $10,000. In Graham v. Central of Ga., 1928, 217 Ala. 658, 117 So. 286, 288, the court said:

"It is unquestionably settled by the decisions of this court, that, notwithstanding the wife must sue for personal injuries to herself, the husband may maintain an action for compensatory damages, not for the injury, but resulting therefrom, such as the loss of her services or society, the cost of nursing and caring for her, etc. * * * This is true, although the injury produces death which is not immediate, and notwithstanding the right of action for the wrongful death of the wife is confined to her personal representative under the terms of section 5696 of the Code of 1923.

" 'But if the injury resulted in her death, this cannot, at the common law, be taken into account, either as the ground of action or as an aggravation of damages, and the husband's recovery must be limited to the loss suffered intermediate the injury and death.' Cooley on Torts, (3d Ed.) p. 470."

Colorado appears to adhere to this guide. American Ins. Co. v. Naylor, 101 Colo. 41, 70 P.2d 353. A similar limitation of damages was approved in Mageau v. Great No. Ry. Co., 1908, 103 Minn. 290, 115 N.W. 651, 652, 15 L.R.A.,N.S., 511, 14 Ann. Cas. 551, where the court said:

"It is entirely clear that there can be no recovery by the husband in his own right for damages subsequent to the death of the wife."

Accord: Hyatt v. Adams, 16 Mich. 180; Harper & James, supra, p. 637, note 10. This is the rule in 3 Restatement, Torts, § 693, Comment e, Damages:

"In case of death resulting to the wife, the husband may recover under the rule stated in this Section only for harm to his interests and expense incurred between the injury and death. For any loss sustained as a result of the wife's death, he must recover, if at all, under a wrongful death statute."

This being the limitation of the husband's recovery of damages resulting from the injury and death of his wife caused

by a negligent tort-feasor, the same limitation of damages should be applied to the wife's recovery under like circumstances. The cause of action does not abate. Mageau v. Great No. Ry. Co., supra. Perhaps it is incorrect to say that the spouse's action survives; the cause of action remains; the question of damages only is affected by the death of either spouse. While in an action involving permanent injuries to a spouse where both are living, it may be that the life expectancy of both the husband and wife, with other facts and circumstances, would become material, that question is not presented by this appeal. Plaintiff's contentions of survival of causes of action under SDC Supp. 33.0414-1 are therefore not applicable. It appears that our wrongful death statute includes all of the elements of damage that could be included in an action such as the plaintiff now brings in her own name for damages due to her husband's death; that the legislature did not intend duplicate recoveries therefor and by this result double damages are thereby prevented.

■ The main point of difference between the wrongful death statute and the action which plaintiff now brings is in the amount recoverable. Much of the criticism of the wrongful death statutes springs from this difference. It is contended that a wrongful death statute is never a complete and full recovery for the wrongful death of a person where it limits the amount recoverable. There is some merit in this argument. However, as we said in Rowe v. Richards, supra, and in Simons v. Kidd, 73 S.D. 280, 41 N.W.2d 840, our wrongful death statute created a new cause of action on behalf of specified beneficiaries for injury resulting to these beneficiaries from the death of decedent. "Since the right was unknown to common law, the legislatures which created the right were free to impose restrictions upon it." Harper & James, The Law of Torts, § 24. If the present limitation of $20,000 prevents a full and complete recovery for the wrongful death of a person, the legislature can change or abolish such limitation. Cf. Hall v. Gillins, 13 Ill.2d 26, 147 N.E.2d 352.

We do not believe that our conclusions here run counter to decisions here noticed. Rowe v. Richards, 32 S.D. 66, 142

N.W. 664, L.R.A.1915E, 1069, held that a widow could not in her own name maintain an action for damages resulting from the death of her husband caused by a negligent act; Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001, L.R.A.1915E, 1075, approved a judgment in favor of his administratrix based on the same negligence under our version of Lord Campbell's Act, declaring this to be a new cause of action.

In the Moberg v. Scott case, supra, this court sustained a complaint on demurrer and then a judgment for actual and exemplary damages to a widow who sued in her own name for wrongful sale of drugs to her husband; the first opinion in 38 S.D. 422, 161 N.W. 998, L.R.A.1917D, 732, quotes the complaint in full, it claims damages for loss of consortium for the period of more than one year prior to March 17, 1914 when the husband died; the second opinion in 42 S.D. 372, 175 N.W. 559, is worded as if the action was for the period of illness and his death; we have examined the briefs in both cases and find the complaint was not amended or changed and so it appears that the action was only for damages occurring during the husband's lifetime and the question of damages in this respect was not raised or decided in that action.

We find no error in the orders appealed from.

The appeals in both No. 9704 and No. 9710 are affirmed. No costs will be allowed to either party.

SMITH and RENTTO, JJ., concur.

HANSON, P. J., and ROBERTS, J., dissent in part.

HANSON, Presiding Judge (dissenting in part).

I am unable to concur in that portion of the opinion which recognizes, or creates, a separate cause of action in the wife for loss of consortium resulting from negligent injury of her husband.

This portion of the opinion is contrary to the great weight of authority. It has been considered, and rejected, in twenty-seven states and in England. It has been approved in only three states. See Annotation in 23 A.L.R.2d 1378 as supplemented for a comprehensive discussion and collection of cases on this subject.

The cases of Moberg v. Scott, Holmstrom v. Wall, and Swanson v. Ball involve intentional wrongs which directly disrupted the wife's marital relationship. The husbands therein had no cause of action against the wrongdoer because of their participation in the wrongful act. Consequently there was no question of double recovery involved. The reasoning in those cases should not be extended to include a wife's recovery for loss of consortium resulting from the negligent injury of her husband. The great majority of our courts have refused to do so.

The majority opinion proceeds on the assumption that in South Dakota a husband has a common-law right of action for loss of his consortium by reason of the negligent injury of his wife. If this were so, I would be inclined to agree with the majority opinion and grant the same right to the wife. It would be indefensible to allow one to recover and not the other. However, the law in South Dakota with respect to the husband's right to recover has never been declared or settled. The majority opinion cities no South Dakota case supporting their assumption. The common law of the several states on this point is not settled or the same. Several states deny the husband's cause of action. Lockwood v. Wilson H. Lee Company, 144 Conn. 155, 128 A.2d 330; Bolger v. Boston Elevated Railway Co., 205 Mass. 420, 91 N.E. 389; Blair v. Seitner Dry Goods Co., 184 Mich. 304, 151 N.W. 724, L.R.A.1915D, 524; Helmstetler v. Duke Power Co., 224 N.C. 821, 32 S.E.2d 611, and Martin v. United Electric Rys. Co., 71 R.I. 137, 42 A.2d 897. The question has not been settled in California. Deshotel v. Atchison, Topeka & Santa Fe Railway Co., 50 Cal.2d 664, 328 P.2d 449.

In my opinion neither the husband nor wife has a cause of action for loss of consortium resulting from the negligent injury of the other. As the New York court observed in the recent case of Kronenbitter v. Washburn Wire Company, 4 N.Y.2d 524, 176 N.Y.S.2d 354, 355, 151 N.E.2d 898, "The argument that equality of the sexes calls for a change overlooks that the husband's right to damages for loss of consortium is based on outworn theory. It derives from the time when the wife was regarded in law in some respects as her husband's chattel. He was allowed damages for in-

jury to her in much the same manner that he would have been allowed damages for the loss or injury of one of his domestic animals." The court indicated the action should be restricted or abolished rather than extended.

The husband's separate cause of action for loss of consortium grew out of and was founded upon the wife's subservient legal status. The common-law disabilities of the wife were removed by the enactment of our Married Women's Act. The husband and wife now have legal equality. Both have equal access to our courts for the full and complete redress of their respective wrongs and injuries. Thus the ancient foundation upon which the husband's cause of action for loss of consortium rested has been removed. No reason remains why either party to the marriage should have a duplicating cause of action for injury of the other. This ancient cause of action should be left buried in the past rather than revived and extended to the wife. In my opinion, the legal effect of our Married Women's Act was "to equalize the legal status of husband and wife, and to deny to each any overlapping recovery on account of the other's loss or injury." Helmstetler v. Duke Power Co., 224 N.C. 821, 32 S.E.2d 611, 613.

ROBERTS, J., concurs.