**Katherine SCHREINER, Appellant,**

**v.**

**Clay FRUIT and Equitable Life Assurance Society of the United States, Appellees.**

**No. 1949.**

Supreme Court of Alaska.

Feb. 25, 1974.

Sandra K. Saville, of Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, for appellant.

Sigurd E. Murphy, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee Fruit.

Robert J. Dickson, of Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for appellee Equitable.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, and FITZGERALD, JJ.

RABINOWITZ, Chief Justice.

The principal issue we are called upon to decide in this appeal is whether a wife has an independent right to sue for loss of consortium due to negligently inflicted injury to her husband.

Katherine Schreiner's husband sustained serious injuries rendering him permanently and totally disabled as a result of the negligence of Appellee Clay Fruit, an employee of Appellee Equitable Life Assurance Society of the United States. As a result of the accident, Mr. Schreiner filed suit against Fruit and Equitable in superior court. After a trial by jury, judgment was entered in Mr. Schreiner's behalf in the amount of $769,467.22. Appeal was taken to this court and the judgment affirmed.[1]

Subsequent to the entry of judgment in her husband's suit, Mrs. Schreiner sued Fruit and Equitable for the loss of consortium of her husband resulting from the injuries sustained in the same accident that was the subject of his suit. Equitable then filed a motion for judgment on the pleadings, claiming that Katherine Schreiner had failed to state a claim upon which relief could be granted. Clay Fruit joined in this motion. In support of the motion Fruit and Equitable argued that Alaska law did not recognize the right of a wife to sue for loss of consortium based on a negligently inflicted injury to her husband. Even if such an action were determined to be allowable, Equitable contended that the claim for loss of consortium by the wife must be joined with the husband's claim based on the injury, and since Mrs. Schreiner had failed to do so, the motion for judgment on the pleadings should be granted. The superior court granted the motion on the ground that a wife does not have an independent claim for loss of consortium. We hold that this was error and that a wife has a right to sue for loss of consortium due to a negligently inflicted injury to her husband.

This is a case of first impression in the State of Alaska. The common law, which is in force in Alaska,[2] recognized the right of the husband to sue for any interference with his interest in his wife, but failed to recognize the right of a wife to sue for loss of consortium. Guy v. Livesay, 79 Eng.Rep. 428 (1619). Denial of relief to the wife was based on outmoded concepts that the wife possessed such an inferior interest in the marital relationship that there could be no injury to such interest that deserved compensation.

At common law, the husband at the time of marriage received all of his wife's personal property, money and chattels and became entitled to his wife's services; if he lost these services through the acts of another, that person had to respond in damages.[3] The husband was allowed to sue for loss of consortium both because of the wife's status as a chattel of her husband, and because of her inability to bring suit in her own behalf for injuries she sustained.[4] In general, married women

1. Fruit v. Schreiner, 502 P.2d 133 (Alaska 1972).

2. AS 01.10.010 provides that:
   So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.

3. 8 Holdsworth, A History of English Law 427, 430 (2d ed. 1973).

4. 1 Blackstone Commentaries 443. In Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669, 671 (1959) the court said in part:
   The husband's remedy was per quod consortium amisit (whereby he lost the company of his wife) and not per quod servitium (whereby he lost the service of his servant).

were considered to lack a legal identity and were thus precluded from owning property, making contracts, or bringing suit on their own behalf.

The Supreme Court of Michigan described the situation in the following manner:

> This, then, is the soil in which the doctrine took root; the abject subservience of the wife to the husband, her legal nonexistence, her degraded position as a combination vessel, chattel and household drudge . . . . Montgomery v. Stephan, 359 Mich. 33, 101 N. W.2d 227, 230 (1960).

The landmark case acknowledging that a woman has a separate and independent cause of action for loss of consortium is Hitaffer v. Argonne Co.[5] The *Hitaffer* opinion signified the beginning of a change in state court decisions.[6]

In *Hitaffer* the court said:

> The actual injury to the wife from loss of consortium, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife

is no greater than her right to the conjugal society of her husband. Marriage gives each the same rights in that regard. Each is entitled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation . . . of a legal right arising out of the marriage relation . . . . As the wrongs of the wife are the same in principle, and are caused by acts of the same nature, as those of the husband, the remedy should be the same.[7]

The married woman's common law disability to bring suit was ended by a series of acts referred to as the Married Woman's Acts.[8] The requirement that suit be brought by the husband when the wife was injured in order that redress be available was thereby ended. Nevertheless there remains some dispute as to whether Married Woman's Acts have any bearing on the question of the wife's right to sue for loss

---

5. 87 U.S.App.D.C. 57, 183 F.2d 811 (1950), cert. denied, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1952).

6. At present about half of the states allow the wife to sue for loss of her husband's consortium. *See* City of Glendale v. Bradshaw, 108 Ariz. 582, 503 P.2d 803 (1972); Missouri Pacific Transp. Co. v. Miller, 227 Ark. 351, 299 S.W.2d 41 (1957); Crouch v. West, 477 P.2d 805 (Colo.App.1970); Yonner v. Adams, 3 Storey 229, 53 Del. 229, 167 A.2d 717 (Del.Super.1961); Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (1958); Gates v. Foley, 247 So.2d 40 (Fla. 1971); Campbell v. Atlanta, 117 Ga.App. 824, 162 S.E.2d 213 (1968); Nichols v. Sonneman, 91 Idaho 199, 418 P.2d 562 (1966); Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881 (1960); Troue v. Marker, 253 Ind. 284, 252 N.E.2d 800 (1969); Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480 (1956); Kotsiris v. Ling, 451 S.W.2d 411 (Ky.1970); Deems v. Western Maryland Ry., 247 Md. 95, 231 A.2d 514 (1967); Montgomery v. Stephan, 359 Mich. 33, 101 N.W.2d 227 (1960); Thill v. Modern Erecting Co., 284 Minn. 508, 170 N.W.2d 865 (1969); Novak v. Kansas City Transit, Inc., 365 S.W.2d 539 (Mo.1963); Duffy v. Lipsman-Fulkerson Co., 200 F.Supp.

71 (D.Mont.1961) (applying Montana law); Cooney v. Moomaw, 109 F.Supp. 448 (D.Neb. 1953) (applying Nebraska law); La Bonte v. Nat'l Gypsum Co., 110 N.H. 314, 269 A.2d 634 (1970); Ekalo v. Constructive Service Corp., 46 N.J. 82, 215 A.2d 1 (1965); Millington v. Southeastern Elevator Co., 22 N.Y. 2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968); Clouston v. Remlinger Oldsmobile Cadillac, Inc., 22 Ohio St.2d 65, 258 N.E.2d 230 (1970); Ross v. Cuthbert, 239 Or. 429, 397 P.2d 529 (1965); Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669 (1959); Moran v. Quality Aluminum Casting Co., 34 Wis.2d 542, 150 N.W.2d 137 (1967).

7. 183 F.2d at 816, quoting from Bennett v. Bennett, 116 N.Y. 584, 23 N.E. 17 (1889). The *Hitaffer* court went on to state that as marriage is no longer considered to be a master-servant relationship, the parties should have equal rights under the law. 183 F.2d at 819.

8. AS 25.15.110 provides in part that:
   All laws which impose or recognize civil disabilities upon a married woman which are not imposed or recognized as existing as to the husband are repealed.
   *See* Cramer v. Cramer, 379 P.2d 95 (Alaska 1963).

of consortium. The argument is that if the wife had no right to sue for loss of consortium at common law, then simply removing her disability did not create one. The following statement of the California court in Deshotel v. Atchison, Topeka & Santa Fe Railway Co.[9] is typical of the viewpoint that enactment of Married Woman's Acts did not create a right in the wife to sue for loss of consortium:

> It is clear that the granting of relief to the wife for loss of consortium caused by negligent injury to her husband would constitute an extension of common law liability, and the courts are justifiably reluctant to depart from established limitations on recovery.[10]

The *Deshotel* court went on to hold that the legislature is the more appropriate forum in which to decide the question of the right of a wife to sue for loss of consortium.[11] On the other hand, the *Hitaffer* court took the position that the wife did have a right to sue for loss of consortium, but was denied a remedy by her disability to bring suit.[12] There is also authority that courts should establish the right to sue for loss of consortium, and not defer to the legislature, even if the court finds that such a right did not exist at common law. In Dini v. Naiditch[13] the court stated:

Inasmuch as the obstacles to the wife's action were "judge invented," there is no conceivable reason why they cannot be "judge destroyed." We find no wisdom in abdicating to the legislature our essential function of re-evaluating common-law concepts in the light of present day realities. (citation omitted)

A similar position was taken in Leffler v. Wiley[14] where it was observed that:

> The courts should not perpetuate in the common law a discrimination that could not constitutionally be created by statute.[15]

■ We are of the view that in the context of this litigation it would be inappropriate for this court to wait for legislative action in order to give recognition to the wife's right to sue for loss of consortium.[16] Although Fruit and Equitable argue that neither husband nor wife should have a claim for relief from loss of consortium, we decline to adopt this position.[17] A claim for relief for loss of consortium provides a means of recovery for an injury not otherwise compensable. It should be recognized as "compensating the injured party's spouse for interference with the continuance of a healthy and happy marital life."[18] The interest to be protected is personal to the wife, for she suf-

9. 50 Cal.2d 664, 328 P.2d 449 (1958).

10. *Id.* 328 P.2d at 451. Two years after the decision in *Deshotel*, the California court decided that the right to sue for loss of consortium would not be recognized for either the husband or wife. West v. City of San Diego, 54 Cal.2d 469, 6 Cal.Rptr. 289, 353 P.2d 929 (1960).

11. Other state courts that have refrained from recognizing the right in deference to the legislature include those of Alabama, Maine, Oklahoma, Pennsylvania, South Carolina, Virginia, West Virginia.

12. 183 F.2d at 816.

13. 20 Ill.2d 406, 170 N.E.2d 881, 892 (1960).

14. 15 Ohio App.2d 67, 239 N.E.2d 235 (1968).

15. *Id.* 239 N.E.2d at 236. *Accord,* Kotsiris v. Ling, 451 S.W.2d 411 (Ky.1970) ; Novak v. Kansas City Transit, Inc., 365 S.W.2d 539 (Mo.1963) ; Millington v. Southeastern Ele-

vator Co., 22 N.Y.2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968) ; Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669 (1959).

16. Discrimination on the basis of sex in granting only the husband the right to sue for loss of consortium would also violate the Alaska Constitution, which reads in part:
No person is to be denied the enjoyment of any civil or political right because of race, color, creed, sex, or national origin. Alaska Const. art. I, § 3.

17. The husband's right to sue for loss of consortium has been recognized in trial courts of this state, but has not previously been accorded explicit recognition by this court.

18. Millington v. Southeastern Elevator Co., 22 N.Y.2d 498, 293 N.Y.S.2d 305, 308, 239 N.E.2d 897, 900 (1968). The court in *Millington* noted a movement in New York to allow recovery for protection of essentially emotional interests. *See* Prosser, Law of Torts § 54 at 328 (4th ed. 1971).

fers a loss of her own when the care, comfort, companionship, and solace of her spouse is denied her. The basis for recovery is no longer the loss of services, but rather the injury to the conjugal relation. We therefore hold that the claim for relief for loss of consortium, in both husband and wife, should be given recognition in Alaska.[19]

Another question raised by this appeal is whether the spouse's claim for relief for loss of consortium should be required to be joined with that of the injured spouse for the ensuing damages, and if so, whether such a joinder rule should be applied prospectively. The principal advantage to a rule of required joinder is that it reduces the chances of double recovery. Courts that do require joinder emphasize considerations of judicial economy. They also express the fear that the jury will consider the harm suffered by the spouse in calculating the husband's recovery, and increase his damages accordingly.[20] Allowing the wife to recover damages for her harm again in a subsequent suit would result in a double recovery. As the court in Cooney v. Moomaw[21] pointed out:

> The strongest objection which can be made to the granting of relief in this case is the possibility of double recovery. The husband having already recovered for loss of his earning capacity, the wife indirectly benefits from his recovery, and may not now recover the second time from the same defendant for the same damage. (citations omitted)

Except in special cases that render it impossible for the parties to bring suit together, joinder appears to be a practical and fair solution to the problem and in our view is mandatory. In Scheele v. City of Anchorage[22] we acknowledged that the federal Constitution has not been held to require that cases be given full retroactive effect in all instances.[23] In recent criminal cases, we have upheld prospective application of particular holdings and have established certain criteria for guiding resolution of this matter, including the examination of the purpose to be served, the extent of reliance on old standards, and the effect on the administration of justice.[24]

The United States Supreme Court in its most recent outline of criteria to be applied in civil cases stated:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for

---

19. The marriage relationship is protected from intentional interference, and we perceive no sound reason for not including negligent interference within the legal protection afforded by this claim for relief. *See* Montgomery v. Stephan, 359 Mich. 33, 101 N.W.2d 227 (1960).

20. *See* Deems v. Western Maryland Ry. Co., 247 Md. 95, 231 A.2d 514 (1967); Thill v. Modern Erecting Co., 284 Minn. 508, 170 N.W.2d 865 (1969); Ekalo v. Construction Serv. Corp., 46 N.J. 82, 215 A.2d 1 (1965); Millington v. Southeastern Elevator Co., 22 N.Y.2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968); Moran v. Quality Aluminum Casting Co., 34 Wis.2d 542, 150 N.W.2d 137

(1967); Moore v. Baker, 25 Ohio Misc. 140, 266 N.E.2d 593 (1970).

21. 109 F.Supp. 448, 450–451 (D.Neb.1953).

22. 385 P.2d 582 (Alaska 1963).

23. *See* Great N. Ry. v. Sunburst Oil and Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932) wherein Justice Cardozo stated that prospective application of a new ruling is not prohibited by the Constitution whether the subject of the new decision is common law or statute.

24. Rutherford v. State, 486 P.2d 946, 952 (Alaska 1971); Judd v. State, 482 P.2d 273, 277 (Alaska 1971).

"[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [25]   (citations omitted)

The Court further explained that in deciding the question of retroactivity, the weighing of equities comprehends an analysis of the reliance interests of parties potentially affected by the new law.[26]

In applying these standards to the instant case we are persuaded that the requirement of joinder should be made retroactive. The case at bar is not a situation in which there existed extensive reliance on old standards, as there was no established rule which permitted nonjoinder in suits for loss of consortium. Mrs. Schreiner had as much reason to believe that there was a requirement of joinder as she did to think that her claim for loss of consortium would be recognized. Since there is no showing that appellant was misled as to the appropriate rule of law, we conclude that the element of reliance on preexisting standards is lacking here. Further we are of the view that to accord the requirement of joinder prospective application would only have a detrimental effect on the administration of justice. Permitting a cause of action for consortium to be litigated separately would result in the inefficient use of judicial resources.

The superior court's order granting judgment on the pleadings is affirmed.

---

25. Chevron Oil Co. v. Huson, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971).

26. *Id.* at 107–108, 92 S.Ct. at 355–356, 30 L.Ed.2d at 306–307.