Rachael HIBPSHMAN, Bethany Hibpshman, Terah Hibpshman and Micah Hibpshman, By and Through Thomas G. Hibpshman and Rebecca Hibpshman, natural parents and guardians, Appellants,

v.

PRUDHOE BAY SUPPLY, INC., and Alaska Explosives, Ltd., Appellees.

No. S-1176.

Supreme Court of Alaska.

March 27, 1987.

Rand D. Dawson, Anchorage, for appellants.

Howard Staley, Schaible, Staley, DeLisio & Cook, Inc., Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I. BACKGROUND.

Thomas Hibpshman was severely injured while employed on the North Slope. He thereafter instituted suit against Prudhoe Bay Supply, Inc., and Alaska Explosives, Ltd. [hereinafter collectively referred to as "Prudhoe Bay"], for damages for personal injuries, alleging negligent breach of a duty to provide premises free from unreasonable defects and hazards. In this same complaint, his wife Rebecca Hibpshman asserted a claim for loss of spousal consortium.

The four minor children of Thomas and Rebecca subsequently asserted a claim

against the same defendants for loss of parental consortium. Prudhoe Bay moved in the alternative to dismiss the children's complaint on the ground that it failed to state a claim upon which relief can be granted,[1] or to consolidate the children's claim with those of their parents.[2]

The superior court entered a final order dismissing the loss of parental consortium claim, and the Hibpshman children now appeal that order, requiring us to determine whether minor children have an independent cause of action for loss of parental consortium resulting from injuries tortiously inflicted on their parent by a third person.[3]

**1.** Alaska R.Civ.P. 12(b)(6).

**2.** The children did not oppose the motion to consolidate.

**3.** The minor children also asserted a claim for loss of pecuniary benefits due to their father's injury. They did not oppose defendants' motion to dismiss that claim, nor have they appealed its dismissal.

**4.** The following courts have refused to recognize the cause of action: *Early v. United States,* 474 F.2d 756 (9th Cir.1973) (Alaska law); *Pleasant v. Washington Sand & Gravel Co.,* 262 F.2d 471 (D.C.Cir.1958) (District of Columbia law); *Meredith v. Scruggs,* 244 F.2d 604 (9th Cir.1957) (per curiam) (Hawaii law); *Hoesing v. Sears, Roebuck & Co.,* 484 F.Supp. 478 (D.Neb.1980) (Nebraska law); *Turner v. Atlantic Coast Line R.R.,* 159 F.Supp. 590 (N.D.Ga.1958) (South Carolina law); *Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 269 P.2d 723 (1954), *overruled on other grounds, City of Glendale v. Bradshaw,* 108 Ariz. 582, 503 P.2d 803 (1972); *Lewis v. Rowland,* 287 Ark. 474, 701 S.W.2d 122 (1985); *Borer v. American Airlines,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977); *Zorzos v. Rosen,* 467 So.2d 305 (Fla.1985); *W.J. Bremer Co. v. Graham,* 169 Ga.App. 115, 312 S.E.2d 806 (1983), *writ denied,* 252 Ga. 36, 312 S.E.2d 787 (1984); *Mueller v. Hellrung Constr. Co.,* 107 Ill.App.3d 337, 63 Ill. Dec. 140, 437 N.E.2d 789 (1982); *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57 (1962); *Hickman v. Parish of East Baton Rouge,* 314 So.2d 486 (La.App.), *writ refused,* 318 So.2d 59 (La. 1975); *Salin v. Kloempken,* 322 N.W.2d 736 (Minn.1982); *Bradford v. Union Elec. Co.,* 598 S.W.2d 149 (Mo.App.1979); *General Electric v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Transp. Co.,* 61 N.J. 502, 295 A.2d 862 (1972); *DeAngelis v. Lutheran Medical Center,* 84 A.D.2d 17, 445 N.Y.S.2d 188 (1981), *aff'd,* 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406

## II. DID THE SUPERIOR COURT ERR IN GRANTING PRUDHOE BAY'S MOTION TO DISMISS?

### A. Status of Court Decisions Regarding Claims for Loss of Parental Consortium.

Although a majority of the courts which have considered the issue have refused to recognize a child's cause of action based on loss of parental consortium resulting from negligent injury to a parent,[4] legal commentators have criticized the majority rule,[5] and six of the eleven state supreme courts which have considered the issue since the start of 1980 have endorsed the loss of parental consortium claim.[6]

(N.Y.1983); *Morgel v. Winger,* 290 N.W.2d 266 (N.D.1980); *Gibson v. Johnston,* 144 N.E.2d 310 (Ohio App.1956), *appeal dismissed,* 166 Ohio St. 288, 141 N.E.2d 767 (1957); *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 652 P.2d 318 (1982).

**5.** The following commentators support recognition of the parental consortium cause of action: W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts [hereinafter *Prosser and Keeton* ] § 125, at 936 (5th ed. 1984); W. Prosser, Handbook of the Law of Torts § 125, at 896–97 (4th ed. 1971); Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship,* 51 Ind.L.J. 591 (1976); Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U.L.Rev. 722 (1976); Comment, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal,* 13 San Diego L.Rev. 231 (1975); Note, *The Child's Cause of Action for Loss of Consortium,* 5 San.Fern.V.L.Rev. 449 (1977).

**6.** These decisions seem to represent an emerging trend toward recognition; as of 1979, no state had permitted a child to sue for loss of parental consortium. *See Borer v. American Airlines,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 308, 563 P.2d 858, 864 (1977); *Weitl v. Moes,* 311 N.W.2d 259, 261–62 (Iowa 1981), *overruled in part, Audubon-Exira Ready Mix v. Illinois Cent. Gulf R.R.,* 335 N.W.2d 148 (Iowa 1983); *see generally Prosser and Keeton, supra* note 5, at 935–36.

The cases recognizing parental consortium are: *Audubon-Exira Ready Mix,* 335 N.W.2d 148 (interpreting state statute to encompass cause of action); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); *Hay v. Medical Center Hosp.,* 145 Vt. 533, 496 A.2d

### B. *Alaska Law Concerning Injuries to Family Members.*

In the past we have not hesitated, where appropriate, to adopt novel common law theories concerning injuries to family members. For example, we rejected the doctrines of interspousal and parental immunity in the context of negligence-based claims, even though most jurisdictions espoused the immunity defenses at the time of our decisions. *See Cramer v. Cramer,* 379 P.2d 95, 96 (Alaska 1963) (interspousal immunity); *Hebel v. Hebel,* 435 P.2d 8, 9 (Alaska 1967) (parental immunity). Moreover, in *Schreiner v. Fruit,* 519 P.2d 462, 466 (Alaska 1974), we concluded that a wife or husband has a right to sue for loss of consortium caused by negligently inflicted injury to his or her spouse.[7] In reaching this result, we reasoned:

> [I]t would be inappropriate for this court to wait for legislative action in order to give recognition to the wife's right to sue for loss of consortium. Although Fruit and Equitable argue that neither husband nor wife should have a claim for relief from [sic] loss of consortium, we decline to adopt this position. A claim for relief for loss of consortium provides a means of recovery for an injury not otherwise compensable. It should be recognized as "compensating the injured party's spouse for interference with the continuance of a healthy and happy marital life." The interest to be protected is personal to the wife, for she suffers a loss of her own when the care, comfort, companionship, and solace of her spouse is denied her. The basis for recovery is no longer the loss of services, but rather the injury to the conjugal relation. We therefore hold that the claim for relief for loss of consortium, in both husband and wife, should be given recognition in Alaska.

*Id.* at 465–66 (footnotes omitted).

Of particular importance to the resolution of the issue presented in this appeal is the Alaska statute that expressly specifies that loss of consortium is an element of the damages recoverable in a wrongful death action. AS 09.55.580 provides in part:

> (a) When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had the person lived, against the latter for an injury done by the same act or omission.... The amount recovered, if any, shall be exclusively for the benefit of the decedent's spouse and children when the decedent is survived by a spouse or children, or other dependents....
>
> ....
>
> (c) In fixing the amount of damages to be awarded under this section, the court or jury shall consider all the facts and circumstances and from them fix the award at a sum which will fairly compensate for the injury resulting from the

---

939 (1985); *Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190 (1984); *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984).

The post–1979 cases refusing to recognize the cause of action are *Lewis,* 701 S.W.2d 122; *Zorzos,* 467 So.2d 305; *Salin,* 322 N.W.2d 736; *Morgel,* 290 N.W.2d 266; and *Norwest,* 652 P.2d 318. *See also Sawyer v. Bailey,* 413 A.2d 165, 168 (Me.1980) (dicta); Restatement (Second) of Torts § 707A (1977).

Notably, the seminal decision of the California Supreme Court which declined to recognize the parental consortium cause of action rests in part on grounds which are no longer valid, *see Borer,* 138 Cal.Rptr. at 306, 308, 563 P.2d at 862, 864 (*e.g.,* describing the issue as "a wholly new cause of action, unsupported by statute or precedent"), and in its entirety on policy arguments which the court had previously considered and rejected in establishing a wife's right to sue for loss of spousal consortium. *Id.* 138 Cal.Rptr. at 310, 563 P.2d at 866 (Mosk, J., dissenting) (discussing *Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974)).

7. We recently recognized another cause of action for negligently inflicted, intangible injuries to family members. In *Tommy's Elbow Room v. Kavorkian,* 727 P.2d 1038, 1043 (Alaska 1986), we held that a parent bystander has the right to recover damages for negligent infliction of emotional distress caused by injury to another member of his family. *Cf. Richardson v. Fairbanks North Star Borough,* 705 P.2d 454, 456 (Alaska 1985) (adopting the Restatement (Second) of Torts § 46(1) (1965) formulation of the elements of a claim for intentional infliction of emotional distress).

death. In determining the amount of the award, the court or jury shall consider but is not limited to the following: ...
  (4) loss of consortium....

### C. *A Minor Child's Claim For Loss of Parental Consortium in Alaska.*

■ To a significant extent, our decision today to accord legal recognition to a minor child's claim for loss of parental consortium was foreshadowed by our decisions in *Fruit, Cramer,* and *Hebel,* as well as by subsection (c)(4) of our wrongful death statute. In reaching this result, we find the analysis of those decisions which have recognized the cause of action more persuasive than that of the decisions which have not.[8] Our specific reasons for recognizing a claim for loss of parental consortium follow.

Prudhoe Bay does not dispute that children of injured parents do themselves suffer an actual injury. When a parent is seriously injured, his or her child suffers a loss of enjoyment, care, guidance, love and protection, and is also deprived of a role model. *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513, 516 (1984). Even courts that deny the parental consortium cause of action have acknowledged the reality of such emotional and psychological injury to the child,[9] and the Alaska legislature has implicitly done so in allowing recovery by children for loss of consortium under Alaska's wrongful death statute.[10]

Precluding minor children from maintaining a cause of action for loss of parental consortium arising from their parent's injury would, in our view, be inconsistent with the legislature's authorization of such recovery when the parent dies, and with our prior holding in *Fruit* that a husband or wife may recover damages for loss of consortium when an injured spouse survives. The claim for loss of parental consortium presented in this case is not sufficiently distinguishable from either spousal consortium claims in injury cases or children's consortium claims in death cases to warrant non-recognition.[11] By this holding we

---

**8.** As we declared in *Hebel,* we are not "bound by the mere weight of judicial precedent but rather by the rule which embodies the more persuasive reasoning." 435 P.2d at 9 (citing *Ransom v. Haner,* 362 P.2d 282, 287 (Alaska 1961)).

**9.** *E.g., Borer,* 138 Cal.Rptr. at 310, 563 P.2d at 866; *DeAngelis,* 445 N.Y.S.2d at 190, 191; *Norwest,* 652 P.2d at 323, 332. In this regard Prosser has written:

It is not easy to understand and appreciate ... [judicial] reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence. This is surely a genuine injury, and a serious one....

W. Prosser, *supra* note 5, at 896.

**10.** Prudhoe Bay insists that wrongful death actions differ from those in which the parent is merely injured because they constitute the only available means of securing compensation, whereas in injury cases

the parent will recover ... [the] full damage which he has sustained, including such inability, if any, to properly care for his children, and thus the parent's ability to carry out his duty to support and maintain the child has not, in a legal sense, been destroyed or impaired by the injury to him.

*Hoesing,* 484 F.Supp. at 481 (quoting *Halberg v. Young,* 41 Hawaii 634, 640, 59 A.L.R.2d 445, 450

(1957)). *See also Borer,* 138 Cal.Rptr. at 309–10, 563 P.2d at 865–66. We consider this argument an insufficient basis for denying the parental consortium cause of action. As the Washington Supreme Court in *Ueland* observed:

The state of the law in this area is anomalous in that a child may recover for loss of consortium if the parent dies as a result of another's negligence, but not if the severely injured parent remains alive but in a vegetative state. Surely the child's loss of the parent's love, care, companionship and guidance is nearly the same in both situations. Also, permitting a husband or wife but not children to recover for loss of consortium erroneously suggests that an adult is more likely to suffer emotional injury than a child.

691 P.2d at 192. *Accord Berger,* 303 N.W.2d at 426; *Hay,* 496 A.2d at 941. This point is well taken even when the parent is not so severely injured as to be in a vegetative state; the amount of loss of consortium damages will reflect the degree of the child's loss.

**11.** As to the former type, the children here argue that a disabling parental injury affects the nuclear family unit as much as it affects the noninjured spouse, and they refute any contention that parental consortium should be denied because the nature of a consortium claim is inherently "sexual," based on the language in *Fruit* that we quoted above. *See* 519 P.2d at 465–66. For other authorities providing sup-

expressly reject the arguments against recognition of the parental consortium cause of action advanced by Prudhoe Bay. We will address each of these arguments in turn.

Prudhoe Bay asserts that permitting claims for parental consortium would augment rather than alleviate any injury to intrafamilial relationships because allowing independent recovery by the child—and thus guarding the child against the possibility that the parents may not spend their financial resources for the child's benefit—disrupts the normal course of parent-child relations in which the parents have full discretion regarding family expenditures. We find this argument meritless. In the circumstances at bar, the possibility of a threat to family harmony is no different from that which arises in other cases involving family litigation, including wrongful death actions. *See Hay v. Medical Center Hosp.*, 145 Vt. 533, 496 A.2d 939, 943 (1985). The Alaska legislature has specifically provided for independent recoveries by family members in wrongful death suits, and thus impliedly rejected family harmony as a significant threat. *See* AS 09.55.580(a). Moreover, we expressly rejected potential intrafamilial conflicts as a ground for denying relief when we abolished both interspousal immunity, *see Cramer*, 379 P.2d at 96, and parental immunity with respect to the negligent injury of a child. *See Hebel*, 435 P.2d at 8. As the Hibpshman children observe, these types of actions are surely more disruptive

of family relationships than a suit involving consortium claims against a third person.[12]

Prudhoe Bay additionally asserts that we should defer to the legislature on this issue because of the significant policy considerations involved. However, we faced a similar contention in *Fruit* in the context of expanding spousal consortium claims and explicitly refused to await legislative action. *See* 519 P.2d at 465. Moreover, loss of consortium has been repeatedly recognized as a cause of action created and developed by the courts.[13] We have long recognized our responsibility to adapt the common law to the needs of society as justice requires where the legislature has not spoken.[14]

The parties also dispute whether the difficulty of ascertaining the child's true damages should bar recognition of the parental consortium claim. Prudhoe Bay cites both the speculative nature of the child's intangible damages and the danger of double recovery—that is, for the loss to the parent from his or her inability to care for the children and for the children's loss from the parent's inability to care for them—as militating against recognition of the cause of action.

These arguments are hereby rejected. First, in regard to damage claims for loss of spousal consortium, we have indicated that concern about the purported speculative nature of such claims is overstated and "is inherent in the nature of a jury's assessment of the extent to which an injury

---

port for this argument, see *Berger*, 303 N.W.2d at 426; *Hay*, 496 A.2d at 942; *Ueland*, 691 P.2d at 191 n. 1.

**12.** In *Hebel*, we said in part:

> On the balance we believe that the scales should be weighed in favor of affording the injured child a remedy in this case. In reaching this decision we are not unaware of the pivotal role the family has assumed, and will continue to play, in our culture. Nor are we oblivious to the continuing need for parental discipline and control within the family grouping. And we are fully cognizant that there are large areas of activities within the family sphere involving parental discipline, care, and control which should and must remain free from judicial intrusion.

435 P.2d at 14.

**13.** *See, e.g., Ferriter*, 413 N.E.2d at 695–96; *Hay*, 496 A.2d at 941, 944–46; *Theama*, 344 N.W.2d at 518.

**14.** In *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), we adopted the doctrine of comparative negligence primarily because of the "inherent injustice" of the prior contributory negligence rule. *Id.* at 1048. In so doing, we explained:

> Of great significance to us is the recent adoption of a comparative negligence rule by judicial decision in other jurisdictions. In many instances the rule has been adopted through legislative action, but increasingly it is perceived that a rule which is judicial in origin can be, and appropriately should be, altered by the institution which was its creator.

*Id.* at 1049 (footnotes omitted).

may have affected a marital relationship and the somewhat ephemeral nature of the elements of this relational interest." *Rutherford v. State,* 605 P.2d 16, 26 (Alaska 1979). We see no reason to consider the calculation of damages for a child's loss of parental consortium any more speculative or difficult than that necessary in other consortium, wrongful death, emotional distress, or pain and suffering actions.[15] Second, we think that the potential problem of double recovery can be eliminated by recognizing that pecuniary damages such as lost income which would have been used for the benefit of a child or the cost of substitute child care services are damages recoverable by the parent, not the child; the child's damages would thus be limited primarily to an emotional suffering award in most cases. *See Theama,* 344 N.W.2d at 521–22 ("The problem may be easily cured by limiting the injured parent's recovery to the child's loss of the parent's pecuniary ability to support the child. Similarly, the child's cause of action can be limited to the loss of the parent's society and companionship.") As the Washington Supreme Court stated in speaking to the double recovery issue:

We are not persuaded by this argument since it asks us to recognize that juries do not follow the instructions of the trial court. The proper approach is to bring out in the open the children's damages and properly instruct the jury that they are separate and distinct from the parent's injury. This will prevent the double recovery feared by petitioners.

In *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981), the Michigan Supreme Court ... stated:

"Rather than having juries make blind calculations of the child's loss in determining an award to the parent, a child's loss could be openly argued in court and the jury could be instructed

to consider the child's loss separately. The award would accrue directly to the child rather than be lumped in with that of the parent who may or may not spend it for the child's benefit."

(Citation omitted.) *Berger,* 411 Mich. at 17, 303 N.W.2d 424.

By distinctly specifying the child's damages and properly instructing the jury, we believe the possibility of a double recovery will be prevented.

*Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190, 194–95 (1984). *See also Weitl v. Moes,* 311 N.W.2d 259, 268 (Iowa 1981), *overruled in part, Audubon-Exira Ready Mix v. Illinois Cent. Gulf R.R.,* 335 N.W.2d 148 (Iowa 1983).

Prudhoe Bay further contends that recognition of the parental consortium cause of action will lead to increased litigation. We see no merit in this position. As noted by the Wisconsin Supreme Court, this argument "has been voiced in almost every instance where the courts have been asked to recognize a new cause of action." *Theama,* 344 N.W.2d at 521. *See also Hay,* 496 A.2d at 943. Several other jurisdictions have flatly refused to deny recognition to parental consortium claims because of such contentions:

No doubt there are genuine wrongs that courts are ill suited to set right, and others that do not merit the social costs of litigation. But if these costs are to be the reason for denying an otherwise meritorious cause of action, that is one judgment to be made by legislatures rather than by courts.... If existing procedures make it difficult to consolidate different claims for trial or to avoid overlapping recoveries for the same loss, the obvious answer is not to deny that there is a claim but to reform the procedures. Shortfalls in procedural reform do not justify shortchanging otherwise valid claims.[16]

**15.** *See Berger,* 303 N.W.2d at 427; *Norwest,* 652 P.2d at 323; *Hay,* 496 A.2d at 943–44; *Theama,* 344 N.W.2d at 519–20.

**16.** Several courts have dealt with this issue by expressly confining loss of consortium claims to the nuclear family, to husband-wife and parent-child relationships, *e.g., Weitl,* 311 N.W.2d at

266; and, as the Hibpshmans recommend in this case, some have further limited recovery for loss of parental consortium explicitly to minor children. *E.g., Weitl,* 311 N.W.2d at 270; *Ferriter,* 413 N.E.2d at 696; *Theama,* 344 N.W.2d at 522.

*Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 652 P.2d 318, 323 (1982) (denying recognition on other grounds). *See also Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424, 426–27 (1981); *Ueland,* 691 P.2d at 193.

Advancing a related argument, Prudhoe Bay asserts that recognition of parental consortium should be withheld because the social costs, in particular increased insurance rates and a projected rise in the number of uninsured tortfeasors, outweigh the benefit to the child. We are in agreement with those courts which have concluded that any burden to society is offset by the benefit to the child.[17] In this regard, the Oregon Supreme Court accurately observed that

> [a] person's liability in our law still remains the same whether or not he has liability insurance; properly, the provision and cost of such insurance varies with potential liability under the law, not the law with the cost of the insurance.

*Norwest,* 652 P.2d at 323.

Lastly, Prudhoe Bay argues that recognition of loss of parental consortium will increase the potential for future complex litigation arising from multiple claims which have not been instituted contemporaneously. Other jurisdictions have required joinder of a minor's consortium claim with the injured parent's claim.[18] The instant case does not present the alleged problems since the claims in question were filed within Alaska's two-year tort statute of limitations, and all parties desire consolidation of the minor children's claims with the pending suit of their parents. Nevertheless, we conclude that a practical and fair solution to the problem is to require joinder of the minors' consortium claim with the injured parent's claim whenever feasible.

## III. CONCLUSION.

We hold that minor children have an independent cause of action for loss of parental consortium resulting from injuries tortiously inflicted on their parent by a third person. We further hold that this separate consortium claim must be joined with the injured parent's claim whenever feasible.

Accordingly, the superior court's dismissal of the minor children's claims for loss of parental consortium is REVERSED and the case is REMANDED to the superior court with instructions to consolidate the children's claims with those of their parents.

---

**17.** *E.g., Hay,* 496 A.2d at 946; *Ueland,* 691 P.2d at 195; *Theama,* 344 N.W.2d at 521.

**18.** *E.g., Weitl,* 311 N.W.2d at 270; *Ueland,* 691 P.2d at 194 (both requiring joinder "whenever feasible"). *Cf. Theama,* 344 N.W.2d at 521 (giving no weight to multiple claims argument since claims had been joined). In the *Fruit* case, we addressed the question of whether the spouse's claim for loss of consortium must be joined with the claim of the injured spouse. In this regard we reasoned:

> The principal advantage to a rule of required joinder is that it reduces the chances of double recovery. Courts that do require joinder emphasize considerations of judicial economy. They also express the fear that the jury will consider the harm suffered by the spouse in calculating the husband's recovery, and increase his damages accordingly. Allowing the wife to recover damages for her harm again in a subsequent suit would result in a double recovery....
>
> Except in special cases that render it impossible for the parties to bring suit together, joinder appears to be a practical and fair solution to the problem and in our view is mandatory.

519 P.2d at 466 (footnote omitted).