IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 73413-0-I |
| Respondent, | ) | (consolidated with 73592-6-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| ABDIHAKIM A. MOHAMED, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| ALI ABDI ALI and ABDISHAKUR I. | ) | UNPUBLISHED OPINION |
| IBRAHIM, and each of them, | ) | |
| | ) | |
| Appellants. | ) | FILED: September 26, 2016 |
| | ) | |

BECKER, J. — A show-up identification procedure was not unnecessarily suggestive when an officer told a car robbery victim that they were going to possibly identify suspects who were in his car when it was stopped. When one of the defendants was removed from the courtroom for disruptive behavior, the trial court adequately informed him that he would be allowed to return upon assurance that his conduct would improve.

We affirm.

FACTS

Michael Harris was in downtown Seattle offering people rides in his car for money on an October evening in 2014. He agreed to drive three men to Tukwila.

When the men got out of the car, one of them pulled a gun, held it to Harris's head and told him not to move. All three men got into Harris's car and drove off.

Harris called the police. Within about an hour, officers stopped Harris's car with three men inside. Harris was brought to the location, where he positively identified all three suspects as being involved in the car robbery. The State charged all three men with first degree robbery. A jury convicted them as charged. Two—appellants Abdishakur Ibrahim and Ali Ali—have appealed. Their appeals have been consolidated.

## SHOW-UP IDENTIFICATION PROCEDURE

Both appellants moved to suppress the identification evidence on the basis that the show-up identification procedure was unduly suggestive. At the suppression hearing, the witness was Deputy Jose Bartolo, the responding officer who was with Harris when a broadcast came over his police radio that officers had stopped Harris's car. Bartolo testified that he told Harris that his car "was being stopped at a certain location. And that we'd be going to that location" to possibly identify three subjects who "were in the vehicle."

A number of police vehicles were present with their flashers on when Bartolo and Harris arrived. Bartolo parked with his car's lights directed towards Harris's car. He turned his spotlight on. Each of the three suspects, handcuffed, was brought separately to this lit area, within about two car lengths of Bartolo's car. Bartolo testified that Harris identified them as the three men who rode with him to Tukwila and robbed him.

The trial court entered findings of fact and conclusions of law and denied the motion to suppress. We review a trial court's findings of fact on a motion to suppress to determine whether they are supported by substantial evidence. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Here, no error is assigned to the findings of fact, so they are verities on appeal. Levy, 156 Wn.2d at 733. We review conclusions of law pertaining to suppression of evidence de novo. Levy, 156 Wn.2d at 733.

A defendant asserting that a police identification procedure denied him due process must show that the procedure was unnecessarily suggestive. Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969). If the defendant makes this showing, the court reviews the totality of the circumstances to determine whether the suggestiveness created a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 116, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

A showup is not unnecessarily suggestive just because the suspects were handcuffed and standing near a police car. See State v. Fortun-Cebada, 158 Wn. App. 158, 170, 241 P.3d 800 (2010) ("By itself, the presence of a suspect in handcuffs is not enough to show the show-up procedure was unduly suggestive."); State v. Shea, 85 Wn. App. 56, 60, 930 P.2d 1232 (1997) (same); State v. Guzman-Cuellar, 47 Wn. App. 326, 336, 734 P.2d 996 (1987) ("The thrust of Guzman's argument is that he was handcuffed and standing approximately 15 feet from the police car during the showup. These facts alone

3

are insufficient to demonstrate unnecessary suggestiveness"), review denied, 108 Wn.2d 1027 (1987).

Appellants argue that what made the showup unduly suggestive in this case was the fact that Harris learned from Bartolo and maybe also from the police broadcast that he was going to be taken to the scene where his car was stopped to possibly identify three individuals. They cite State v. McDonald, 40 Wn. App. 743, 744, 700 P.2d 327 (1985). In McDonald, the victim failed to identify the defendant, number 3, in a lineup. After the lineup, a detective told the victim that the subjects arrested following his robbery were numbers 3 and 5 in the lineup. McDonald, 40 Wn. App. at 744. At trial, the victim was allowed to make an in-court identification of the defendant. This court found the detective's statement to be impermissibly suggestive: "He *literally* told [the victim], '*This* is the man." McDonald, 40 Wn. App. at 746. The facts here are not comparable. Bartolo merely told Harris they were going to "possibly identify" three men who were in his car when it was stopped.

Appellants also argue that the use of Bartolo's spotlight and the "unusual" number of police made the showup unnecessarily suggestive. We disagree. As the trial court said in response to the spotlight argument, "I know that the spotlight was used, which would make sense considering it's 11:00 p.m. at night. And if a spotlight hadn't been used, if lighting hadn't been used, that would be the argument in front of me. That there was insufficient lighting." And appellants cite nothing in the record indicating that an "unusual" number of police were present.

The trial court did not err in its conclusion that defendants failed to meet their burden to demonstrate that the show-up procedure was unnecessarily suggestive. Therefore, we need not proceed to the second step of reviewing the totality of the circumstances to determine whether the suggestiveness created a substantial likelihood of irreparable misidentification. Guzman-Cuellar, 47 Wn. App. at 335.

## EYEWITNESS IDENTIFICATION INSTRUCTION

At trial, Ali proposed an eyewitness identification jury instruction.[1] Ibrahim stated his position on two other defense-proposed instructions, but he did not mention the eyewitness instruction. The court declined to give the eyewitness instruction proposed by Ali, and Ibrahim took no exceptions. Ibrahim now argues

---

[1] Ali proposed the Ninth Circuit jury instruction 4.11, which reads:
> You have heard testimony of eyewitness identification. In deciding how much weight to give to this testimony, you may consider the various factors mentioned in these instructions concerning credibility of witnesses.
>
> In addition to those factors, in evaluating eyewitness identification testimony, you may also consider:
> (1) the capacity and opportunity of the eyewitness to observe the offender based upon the length of time for observation and the conditions at the time of observation, including lighting and distance;
> (2) whether the identification was the product of the eyewitness's own recollection or was the result of subsequent influence or suggestiveness;
> (3) any inconsistent identifications made by the eyewitness;
> (4) the witness's familiarity with the subject identified;
> (5) the strength of earlier and later identifications;
> (6) lapses of time between the event and the identification[s]; and
> (7) the totality of the circumstances surrounding the eyewitness's identification.

NINTH CIRCUIT JURY INSTRUCTIONS COMM., MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT 4.11 (2010) (alteration in original).

that the trial court erred in declining to give the jury a specific instruction about eyewitness testimony such as the one proposed by Ali.

The State argues that because Ibrahim did not take exception to the court's refusal to give the instruction, he invited the error he asserts on appeal. To be invited, an error must be the result of an affirmative, knowing, and voluntary act. State v. Lucero, 152 Wn. App. 287, 292, 217 P.3d 369 (2009), rev'd on other grounds, 168 Wn.2d 785, 230 P.3d 165 (2010). Ibrahim did not demonstrate the kind of affirmative conduct that can be classified as inviting the error.

Nevertheless, we generally will not consider an issue that is raised for the first time on appeal. RAP 2.5. Below, Ibrahim did not raise any issue concerning an instruction on eyewitness testimony. Ibrahim makes a cursory claim in his reply brief that failing to give a special instruction on eyewitness testimony is a manifest error affecting a constitutional right. We reject this claim. The trial court gave pattern instructions on witness credibility[2] and the State's burden of proof.[3]

---

[2] You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

These instructions, taken together, are generally sufficient to charge the jury with deciding whether the State has proven beyond a reasonable doubt that the witness correctly identified the defendant. State v. Allen, 176 Wn.2d 611, 686, 294 P.3d 679 (2013). In view of Allen, there was no manifest error. The issue is waived because it was not raised in the trial court.

## RIGHT TO BE PRESENT

Ali interrupted the prosecutor's closing argument with an accusation that defense counsel was giving him drugs and offering him money in exchange for sex. At the court's instruction, a jail guard removed Ali from the courtroom. When the guard returned, he reported that Ali said he did not want to return to court, did not want to talk to his attorney, and wanted only to go back to his jail cell.

If a defendant is removed from the courtroom during his trial, he must be allowed to reclaim his right to be present if he assures the court that his conduct will improve. Illinois v. Allen, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); State v. Chapple, 145 Wn.2d 310, 36 P.3d 1025 (2001). The trial court, aware of this rule, asked defense counsel to advise Ali that he would be permitted to return to the courtroom if he promised to behave appropriately. When the court returned from recess, Ali's attorney stated on the record that he

---

[3]    A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
    A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

had tried to make contact with Ali in the jail and that Ali refused to communicate with him. Closing argument then proceeded without Ali present. Ali argues that the trial court did not give him an appropriate opportunity to reclaim his right to be present.

There are no specific requirements governing the procedure a trial court uses to advise an ejected defendant of his right to reclaim the right to be present. Chapple, 145 Wn.2d at 325-26. In Chapple, the trial court sent defense counsel to ask whether the defendant wanted to return and, if so, to ask if he could conduct himself appropriately. Chapple, 145 Wn.2d at 324. Defense counsel reported back, on the record, that the defendant would not agree to behave differently if allowed to return. Chapple, 145 Wn.2d at 324. This was held to be adequate advisement. Chapple, 145 Wn.2d at 326.

Ali's case is like Chapple except that Ali refused to speak with defense counsel. Ali now argues that because the court knew he was unhappy with his attorney and had previously tried to have him discharged, the court should not have relied on the attorney to deliver the message and should have devised some other method, perhaps by appointing conflict counsel, sending the bailiff with a message, or drafting an order to give to Ali. These options were not proposed to the trial court at the time.

Ali had previously tried to delay the trial based on his alleged dissatisfaction with defense counsel. His outrageously disruptive behavior occurred during closing argument. Ali had two codefendants who both moved for

8

a mistrial based on his outburst. We conclude the steps taken by the court were, under the circumstances, adequate to protect Ali's right to be present at trial.

Affirmed.

Becker, J.

WE CONCUR:

Trickey, ACJ

Cox, J.